[Crim. No. 27608. Second Dist., Div. Four. May 18, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN LOYA SALAS, Defendant and Appellant.

## COUNSEL

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Gerald T. Shea, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—In a first amended information defendant Juan Loya Salas was charged with robbery of Guadalupe Garcia Escobar in violation of section 211 of the Penal Code. It was also alleged that defendant committed the offense with intent to inflict injury, and that he inflicted great bodily injury on the victim. (See Pen. Code, § 213.) In a trial by jury defendant was found guilty. The jury also found to be true the allegation with respect to the intent to inflict such injury and the actual infliction of great bodily injury on the victim. Defendant was sentenced to prison for the term prescribed by law. He appeals from the judgment of conviction.

On April 25, 1975, at approximately 11 p.m., the victim Escobar entered the Tijuana Cafe located in Oxnard, sat at the bar and drank

beer with a friend. Escobar testified that when he sat at the bar he noticed that defendant Salas was already seated at the bar next to the seat where Escobar sat. In an effort to pay for several beers he was ordering for friends, Escobar pulled out of his pocket a $100 bill and handed it to the wife of the bartender-owner; she did not have sufficient change and returned the $100 bill to Escobar. Escobar returned the bill to his pocket and then paid for the beers with other money that he took out of another pocket.

Shortly thereafter, Escobar went to the restroom. When he entered there was no one else in the restroom. Escobar testified that a few seconds later, defendant entered the restroom, struck Escobar in the face and knocked him to the floor. According to Escobar, defendant continued to strike him and kicked him in the side. Escobar testified that defendant ripped his pants pocket, removed from his person the $100 bill and also approximately $13 additional money which he had. After seizing the money defendant also took Escobar's jacket and then left the restroom. Defendant then hurried out of the cafe.

A few seconds later, Escobar came out of the restroom; his face was in a bloody condition. Escobar was taken to the hospital where stitches were required for the cuts on his face. X-rays revealed that Escobar had suffered a fractured nose from the blows delivered by defendant; in addition, Escobar had a tooth knocked out.

Defendant's defense was an alibi. Although defendant did not take the stand and testify, a witness called by him placed defendant at a dance at the time of the alleged robbery.

At defendant's preliminary hearing, after the prosecution had rested its case, defense counsel called as a witness, George Trina, who was employed as a security guard at the Tijuana Cafe on the night of April 25, the date of the Escobar robbery. Trina testified that he saw Escobar at the bar that evening and that he also saw defendant at the bar at the same time, seated near Escobar. Trina testified that he saw Escobar get up from the bar and go into the restroom and that the defendant walked in right behind him. It was Trina's testimony that there were no other persons in the restroom when Escobar went in followed by defendant; that after a few minutes defendant came out of the restroom carrying a cream-colored jacket under his arm and rushed out of the cafe door.

Trina testified that immediately after defendant came out of the restroom, Escobar stumbled out with blood all over his face.

At the trial, Trina's preliminary hearing testimony was admitted in evidence and read into the record after the trial judge had made a finding that Trina was unavailable as a witness and that the prosecution had used due diligence in an effort to produce him as a witness.

Defendant contends that it was reversible error for the trial judge to admit in evidence the preliminary hearing testimony of Trina on the dual grounds that (1) there was an insufficient showing of Trina's unavailability as a witness; and (2) that the admissibility of such testimony violated defendant's witness-confrontation rights under the Sixth Amendment to the United States Constitution. Defendant asserts that Trina's preliminary hearing testimony—admittedly hearsay evidence—was not properly admissible under the former-testimony exception to the hearsay rule, established by Evidence Code section 1291, even if Trina's unavailability as a witness had been properly established.

The prosecution relies for admissibility on Evidence Code section 1291, subdivision (a)(1), which sets forth the first of two situations in which evidence of former testimony is admissible against a party who was a party to the former proceeding in which the former testimony was given. Subdivision (a)(1) provides for the admissibility of evidence of former testimony as an exception to the hearsay rule if (1) the declarant is unavailable as a witness, and (2) "[t]he former testimony is offered *against a person who offered it in evidence in his own behalf* on the former occasion . . . ." (Evid. Code, § 1291, subd. (a)(1).) (Italics supplied.) Under the express language of subdivision (a)(1) of Evidence Code section 1291, evidence of former testimony is made admissible against a party to the current trial who was a party to the former proceeding and who *offered* the former testimony in his own behalf in that proceeding. Nothing further need be shown except the unavailability of declarant as a witness. In the case at bench, defendant was a party to the preliminary hearing proceeding as a defendant, and offered the testimony of Trina in his own behalf *by calling Trina as a witness.*

Defendant contends, however, that evidence of Trina's preliminary hearing testimony ought not to have been admissible against him under Evidence Code section 1291, subdivision (a)(1), even though he called Trina as a witness, because Trina was *an adverse* witness and the

testimony given by him cannot be said to have been offered in evidence by defendant in defendant's own behalf.

Defendant also urges the argument that the admission in evidence of Trina's preliminary hearing testimony deprived defendant of his constitutional witness-confrontation rights. Defendant points out that had the prosecution called Trina as a witness at the preliminary hearing, the hearsay evidence of Trina's preliminary hearing testimony would have been admissible at trial only by meeting the requirements of the former-testimony exception to the hearsay rule as set forth in subdivision (a)(2) of Evidence Code section 1291. Subdivision (a)(2) provides for the second situation in which evidence of former testimony is admissible against a party who was a party to the former proceeding in which the former testimony was given. In this second situation, defendant correctly points out that evidence of the former testimony would have to satisfy the requirement that "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the [current] hearing." (Evid. Code § 1291, subd. (a)(2).)

Defendant's constitutional witness-confrontation argument is without merit. ■ The law is well settled that a defendant's constitutional right of witness confrontation does not preclude the admission against him of hearsay evidence which comes within a recognized exception to the hearsay rule. In *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], the United States Supreme Court announced the principle that the confrontation clause of the United States Constitution is not to be interpreted as precluding state law from creating *new exceptions* to the hearsay rule, i.e., hearsay evidence which would have been inadmissible as not satisfying the requirements of any exception to the hearsay rule in existence at the time of the adoption of the United States Constitution. In *Green,* the prior-inconsistent-statement exception to the exclusionary hearsay rule, created by Evidence Code section 1235, was held to be immune from attack as a violation of a criminal defendant's witness-confrontation rights. Another example of an exception to the hearsay rule being free from attack as a violation of a defendant's witness-confrontation rights is found in *Dutton* v. *Evans* (1970) 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210]. In *Dutton* the court upheld the validity of the co-conspirator exception to the hearsay rule against the contention that it violated a defendant's witness-confrontation rights.

Had Trina been called as a witness by the prosecution at the defendant's preliminary hearing in the instant case, defendant could make no valid claim against admissibility of evidence of Trina's preliminary hearing testimony pursuant to Evidence Code section 1291, subdivision (a)(2), under any theory that a defendant's interest and motive to cross-examine a prosecution witness at a preliminary hearing is not similar to that which he has at the guilt trial. This argument that there is a dissimilarity of interest and motive to cross-examine a witness between the two proceedings has been rejected in a number of cases. A typical rejection of this argument is found in the statement "that the interest and motive for the cross-examination of the prosecution witness at the preliminary hearing and at the trial are similar, notwithstanding that the cross-examination at the preliminary hearing may, by the very nature of that proceeding, be less reaching than at the trial." (*People* v. *Johnson* (1974) 39 Cal.App.3d 749, 755 [114 Cal.Rptr. 545].)

■ Even though the issue at a preliminary hearing involves probable cause to commit a defendant for trial, as distinguished from the issue at trial of guilt beyond a reasonable doubt, the interest and motive for cross-examination at the preliminary hearing are deemed sufficiently similar to the interest and motive for cross-examination of the same witness at the guilt trial so as to preclude application of the witness-confrontation constitutional right. (*People* v. *Benjamin* (1970) 3 Cal.App.3d 687 [83 Cal.Rptr. 764]; *People* v. *King* (1969) 269 Cal.App.2d 40 [74 Cal.Rptr. 679].)

In the case at bench, defendant claims that in calling Trina as a witness at the preliminary examination, defendant's motive and interest were to provide material for the subsequent impeachment of Trina as a witness adverse to defendant at the trial, and that such motive and interest for the direct examination of Trina at the preliminary hearing should not be considered as similar to the motive and interest for examination of this witness at the guilt trial.

This argument of defendant overlooks several factors of consequence. One is that the former-testimony exception to the hearsay rule, created by Evidence Code section 1291, subdivision (a)(1), which makes evidence of former testimony admissible against a party who, as a party to the former proceeding, *offered* the testimony in his own behalf, contains no requirement as to similarity in interest and motive for a party's examination of the declarant between the former proceeding and the current trial. A second factor is that it would be sheer speculation to

ascribe to defense counsel any particular reason for his making the tactical decision to call Trina as a witness at the preliminary examination. A third and more compelling factor for rejecting defendant's argument as lacking in substance is that the record in the instant case reveals that, at the preliminary hearing, defense counsel was given full opportunity to conduct a searching direct examination of Trina as a witness, and was permitted to do so by asking leading questions. The several leading-question objections interposed by the prosecutor were overruled by the magistrate.

The case at bench is in complete accord with the theory that undergirds and justifies the admissibility of evidence of the former testimony of an unavailable declarant against a party to the current trial who, as a party to the former proceeding, offered such testimony in evidence in his own behalf on the former occasion. Under subdivision (a)(1) of Evidence Code section 1291, a party's previous *direct* and *redirect* examination of a witness called by him on the previous occasion is justifiably considered to constitute an adequate substitute for such party's present right to cross-examine the declarant.

We hold, therefore, that the former-testimony exception to the hearsay rule, created by Evidence Code section 1291, subdivision (a)(1), stands on equal footing with the former-testimony exception to the hearsay rule created by Evidence Code section 1291, subdivision (a)(2), as being valid and immune from any constitutional, witness-confrontation attack.

Defendant also attacks the finding of the trial court that Trina was unavailable as a witness and that the prosecution had used due diligence in an effort to secure his presence at the trial. Evidence Code section 240 sets forth several definitions of "unavailable as a witness." Subdivision (a)(5) of section 240 gives one of the definitions of "unavailable as a witness" as meaning "[a]bsent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process." ■ Because of the constitutional witness-confrontation right of a defendant in a criminal case, the concept of what constitutes reasonable diligence to locate an absent declarant is a stringent one for the prosecution. It is not sufficient that reasonable diligence has been exercised in an effort to procure a defendant's attendance "by the court's process." A criminal defendant's witness-confrontation right is deemed to require that the prosecution make the additional showing of a good faith effort and reasonable

diligence to procure the witness' *voluntary* attendance. "In establishing 'due diligence' it is not enough to show that the witness has not been found, but there must be evidence of a substantial character to support the conclusion of due diligence. [Citations.] It contemplates something more than a desultory and indifferent search, but connotes persevering application and untiring efforts in good earnest." (*People* v. *Johnson* (1974) 39 Cal.App.3d 749, 755 [114 Cal.Rptr. 545]; see Jefferson, Cal. Evidence Benchbook (1972) § 2.6, pp. 44-52.)

■ The record indicates that attempts to serve a subpoena on Trina started approximately six weeks prior to trial. During that period of time Officer Finn of the Ventura County sheriff's office visited Trina's residence eight to ten times without success and talked, without success, with Trina's wife on several occasions; on one such occasion Trina's wife told Finn that her husband had gone to Los Angeles looking for employment and she did not know when he would return. Finn also made attempts to locate Trina through the seller of a motor vehicle to Trina and also by making inquiry at his place of former employment. The prosecution called as a witness, Julia Trina, the wife of George Trina, the declarant. Julia testified that she had informed her husband that an effort was being made to subpoena him as a witness for defendant's trial, but that he expressed fear for his own safety and said he was moving to Prescott, Arizona; she had no additional details of his whereabouts.

In addition, an investigator for the Ventura County district attorney's office testified as to his efforts to locate Trina. His efforts included checking with Trina's wife, his mother and her husband. The investigator also sent a teletype check to an investigating agency in Prescott, Arizona. The investigator also made checks with the Department of Motor Vehicles, the California Criminal Records Department, the Federal Bureau of Investigation, a local unemployment office, a medical clinic and the sheriff's office. The investigator also attempted to contact one of Trina's former fellow employees. The date of trial was continued for six days in order for the district attorney's office to continue to make efforts to locate Trina.

■ The evidence indicated that the attempts to serve the subpoena on Trina were all made during the daytime at Trina's home. Defendant makes the contention that since it was made to appear that Trina was deliberately avoiding service of the subpoena, due diligence required the

prosecution to conduct a surveillance of Trina's home during the nighttime hours in an effort to catch him at home. We reject this contention in light of the circumstances presented. Had Officer Finn been advised by Trina's wife that Trina would be available at a particular nighttime hour, and Finn had neglected to attempt service of the subpoena at such time, this would be a factor to be considered on the issue of whether there was a prosecution failure to exercise good faith due diligence. But there is no such showing in this record.

We consider that the evidence presented on the issue of declarant Trina's unavailability as a witness amply supported the trial court's finding that Trina was unavailable as a witness and that the prosecution had used good faith efforts and due diligence to produce him as a witness at the trial. As stated in *People* v. *Williams* (1973) 9 Cal.3d 24, 35 [106 Cal.Rptr. 622, 506 P.2d 998], " '[w]hether due diligence has been shown is a factual question to be determined according to the circumstances of each case. [Citation.] Unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed. [Citations.]' " We find no abuse of discretion in the instant case.

Defendant makes the contention that the evidence was insufficient to sustain the jury's finding that, during the robbery (1) defendant inflicted "great bodily injury" on the victim, and (2) that defendant did so with the intent to inflict such injury. ■ It is clear that the term, "great bodily injury," as used in Penal Code section 213, which increases the punishment for robbery in the second degree (which is involved in the instant case) from imprisonment in the state prison for not less than one year (Pen. Code, § 213) to a minimum of fifteen years (Pen. Code, § 213) refers to a significant or substantial bodily injury or damage, as contrasted with a trivial or insignificant injury. The term, "great bodily harm" has been considered to exclude "moderate harm" as well. (*People* v. *Wells* (1971) 14 Cal.App.3d 348 [92 Cal.Rptr. 191].)

It is undisputed that although there was no evidence that defendant used any kind of weapon on Escobar, Escobar did receive a broken nose, had a tooth knocked out and cuts that required suturing. The injuries were serious enough for the police to have Escobar taken to a hospital for treatment. Defendant argues that a broken nose, a minor cut requiring a couple of stitches and a knocked out tooth must be considered *moderate* injuries and insufficient to satisfy the definition of "great bodily injury" referred to in Penal Code section 213.

In *People* v. *Richardson* (1972) 23 Cal.App.3d 403 [100 Cal.Rptr. 251], a victim of a robbery was struck, knocked down and pulled out into the street and her purse taken from her. Her injuries consisted of large areas of deep black which lasted for about three weeks, and an arm which was so sore that she thought it had been "pulled out of the socket" and which she could not use to any advantage for several days. The *Richardson* court found it unnecessary to decide whether these injuries constituted "great bodily injury" to sustain the increased punishment for robbery because of the deficiency in the instructions to the jury.

The case at bench is not unlike *Richardson* insofar as the matter of instructions is concerned. Hence, we find it unnecessary to determine whether the evidence is sufficient to sustain the increased punishment prescribed by Penal Code section 213.

Defendant's quarrel with the instructions in the instant case is that the trial judge failed to instruct the jury properly with respect to the effect of circumstantial evidence. ■ Defendant's position is that the court should have specifically instructed the jury that it could not find the defendant guilty of inflicting great bodily injury upon the victim unless the proved circumstances not only were consistent with the hypothesis that defendant had the specific intent, but were irreconcilable with any other rational conclusion. This contention is well taken.

It is a well recognized principle of our criminal law that where the evidence offered to establish an element of a crime consists principally of circumstantial evidence, it is essential to justify a conviction that " 'the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.' It cannot be too strongly emphasized that such quoted statement enunciates a most important rule governing the use of circumstantial evidence. In unequivocal language it should be declared to the jury in every criminal case wherein circumstantial evidence is received." (*People* v. *Bender* (1945) 27 Cal.2d 164, 175 [163 P.2d 8].)

This rule stated in *Bender* was reiterated in *People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 49 [286 P.2d 1], in which the court stated the general principle to be "that the court on its own motion should have given an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion." But *Yrigoyen* did not stop with this statement of the principle. *Yrigoyen* proceeded to emphasize the

importance of this principle to the use of circumstantial evidence in a case in which one element of the crime charged may be sought to be proved by direct evidence, while other elements of the crime are sought to be proved by circumstantial evidence. In such a case the indicated circumstantial evidence instruction becomes crucial. Thus it was stated: "And it has been held that the instruction must be given where criminal knowledge is shown only by circumstantial evidence." (*Yrigoyen, supra,* 45 Cal.2d 46, at pp. 49-50.)

However, the *Bender* and *Yrigoyen* cases are not to be interpreted to require the giving of the special circumstantial evidence instruction in every case where some circumstantial evidence is offered on the issue of guilt. "[T]he instruction need not be given, even upon request, where circumstantial evidence is only incidental or corroborative . . . ." (*Yrigoyen, supra,* 45 Cal.2d 46, at p. 50.) But if the basic proof of an essential element of a crime consists of circumstantial evidence, it is unequivocally essential that such an instruction be given.

In *Yrigoyen,* the crime charged was issuing a check without sufficient funds with intent to defraud. Specific intent, as an element of a crime, is established almost invariably by circumstantial evidence. The *Yrigoyen* court concluded, with respect to the issue of defendant's intent to defraud, that "[h]ad the instruction in question been given [the special circumstantial evidence instruction], the jury might have concluded that the circumstantial evidence, while entirely consistent with defendant's guilt, was also consistent with a rational conclusion that he was innocent." (*Yrigoyen, supra,* 45 Cal.2d 46, at p. 50.)

The prosecution contends that the instructions given by the court properly presented the law as to how circumstantial evidence must be considered by the jury. The prosecution points out that the court gave CALJIC instruction No. 2.01[1] and CALJIC instruction No. 2.02.[2] Both of

[1]CALJIC instruction No. 2.01 (1975 rev.) was given as follows: "You are not permitted to find the defendant guilty of [the] crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion. Each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

[2]CALJIC instruction No. 2.02 that was given is as follows: "The specific intent with which an act is done may be manifested by the circumstances surrounding its

these instructions that were given included the principle that guilt can be predicated on circumstantial evidence only if the proved circumstances are not only consistent with the theory of guilt but cannot be reconciled with any other rational conclusion. It is to be noted, however, that this principle as set forth in CALJIC instruction No. 2.02, which was given, dealt only with the specific intent required in the crime of robbery. Thus, one portion of CALJIC instruction No. 2.02 stated to the jury: "But you may not find the defendant guilty of the offense charged in [this case] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to *permanently deprive the owner of his property* but are irreconcilable with any other rational conclusion." (Italics added.)

With respect to the additional element charged of robbery with the specific intent to inflict great bodily injury on the victim (Pen. Code, § 213), the trial court gave CALJIC instruction No. 17.20 (1973 rev.) which required the jury to find proof of such an intent by the burden-of-proof standard of beyond a reasonable doubt. However, in dealing with the issue of specific intent to inflict great bodily injury, the trial judge did not repeat CALJIC instruction No. 2.02—the instruction which it had given with respect to the effect of circumstantial evidence as it applied specifically to the intent in robbery to permanently deprive the owner of his property.

██ We consider that the giving of CALJIC instruction No. 2.02 with respect to the effect of circumstantial evidence in its relation to proof of the specific intent for the crime of robbery itself, without giving the same instruction with respect to the effect of circumstantial evidence in its relation to proof of the specific intent to commit great bodily injury (charged under Pen. Code, § 213), as constituting prejudicial error. The failure of the court to give CALJIC instruction No. 2.02 with respect to the issue of defendant's specific intent to inflict great bodily injury on the victim might well have led the jury to conclude that it could find that defendant possessed such an intent by the circumstantial evidence

commission. But you may not find the defendant guilty of the offense charged in [this case] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to permanently deprive the owner of his property but are irreconcilable with any other rational conclusion. [¶] Also, if the evidence as to such specific intent is susceptible of two reasonable interpretations, one of which points to the existence thereof and the other to the absence thereof, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

introduced without giving consideration to the requirement that the proved circumstances were not only consistent with the hypothesis that he had such specific intent, but were irreconcilable with any other rational conclusion. Such a conclusion is inescapable since the jury was instructed that the opposite was required for a finding of the specific intent to permanently deprive the owner of his property as an element of the offense of robbery itself.

The importance of pin-pointing the special circumstantial evidence instruction with reference to the specific intent to inflict great bodily injury on the victim in a robbery case arises out of the severe consequences which result from this added element. In the absence of the elements of infliction upon the victim of great bodily injury with the intent to inflict such injury, second degree robbery (Pen. Code, § 213) carries a penalty of imprisonment in a state prison for not less than one year. But with the two additional elements present, the punishment is increased to confinement in the state prison for a minimum term of 15 years.

Penal Code section 213 thus creates a drastic enlargement of the minimum term for second degree robbery. This increase in the minimum term for second degree robbery may be contrasted with minimum terms for other serious felonies. The minimum term for second degree murder is five years. (Pen. Code, § 190.) The murder of a human being thus carries a minimum penalty of 10 years less than that imposed for the additional elements in robbery contained in Penal Code section 213. For the offense of putting out an eye, which is one of the crimes described as mayhem (Pen. Code, § 203), the *maximum* punishment is state-prison confinement for 14 years. (Pen. Code, § 204.)

In addition to the instructions being deficient in the case at bench with respect to the effect of circumstantial evidence on the issues of the intent to inflict great bodily injury and the infliction of great bodily injury on the victim of the robbery, the first amended information is itself fatally defective insofar as it sought to comply with Penal Code section 213. Section 213 requires that the fact of an *intent to inflict great bodily injury* and the fact of an actual infliction of great bodily injury on the victim of the robbery shall be charged in the information. The amended information in the case at bench is defective in that, although it properly charges the defendant with having inflicted great bodily injury on Escobar, it does not charge the *intent* element as required by Penal Code section 213. The allegation of "intent" is simply: "With intent to

inflict injury." Such allegation does not comply with Penal Code section 213 if the increased penalty for robbery is sought.

In view of the deficiencies in the allegations of the information and in the instructions, the record in the instant case establishes that there has been a miscarriage of justice.

The judgment appealed from is reversed.

Kingsley, Acting P. J., concurred.

**DUNN, J.**—I dissent.

The majority mentions that appropriate instructions on circumstantial evidence were given, but declares they should have been given twice, once with respect to the elements of robbery and once with respect to proof of the intent to inflict great bodily injury. As to the latter, the majority states that a failure to instruct, might have misled the jury. I do not agree that this is so. The giving of an instruction once is sufficient, since instructions, even if correct, should not be unduly emphasized by repetition. (4 Witkin, Cal. Procedure (2d ed.) Trial, §§ 209, 210, pp. 3027-3028.) The majority then launches into a discussion of the penalties imposed for first degree robbery, which discussion would be more appropriate to a discussion of cruel and unusual punishments and has nothing to do with points raised by defendant in this case.

The majority also states that the amended information was defective in failing to allege "intent" properly. I disagree with the majority that this is so. The amended information states, as to this: "With intent to inflict injury, the said Juan L. Salas inflicted great bodily injury on Guadalupe Garcia Escobar during the commission of the offense alleged herein." Contrasted with this charge is the language of Penal Code, section 213 reading, so far as here pertinent: ". . . and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, such fact shall be charged in the indictment or information . . . ."

I do not concede that the information should allege an intention to inflict great bodily injury and that the amended information is deficient in failing so to allege. The majority cites no authority for its statement and, indeed, there is none in the criminal field. However, in the civil field there is ample authority that an intent to inflict injury is sufficient.

(*Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81 [286 P.2d 816]; *People* v. *Cloward* (1961) 196 Cal.App.2d 669, 672 [16 Cal.Rptr. 772].)

A petition for a rehearing was denied June 4, 1976. On the record in this case, the court feels that the People should not be foreclosed from amending the information if they so desire. Dunn, J., was of the opinion that the petition should be granted for the reasons set forth in his dissent. Respondent's petition for a hearing by the Supreme Court was denied July 15, 1976. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.