[Crim. No. 16015. First Dist., Div. Three. Nov. 30, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JAMES RADIL, Defendant and Appellant.

**COUNSEL**

Edward James Radil, in pro. per., and Patricia A. Zerin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KING, J.*—After a trial by jury, Edward James Radil appeals his conviction of a violation of Penal Code section 459 (burglary) and Penal Code section 245, subdivision (a) (assault with a deadly weapon). Appellant was found not guilty of violating Penal Code section 12022.5 (being armed with and using a firearm).

The victim, Beverly Hemming (she was Beverly Pederson at the time of the crimes), had lived with appellant prior to the incident. In December 1972, appellant was arrested by the police and mistakenly let go several days later. He came to the home he shared with the victim and a fight occurred in which she sustained a black eye. Appellant was rearrested the following day and remained in jail until March 19, 1973, the day before the incidents occurred which resulted in these convictions.

While appellant was in jail after his arrest, the victim visited him several times. On the last visits, she told appellant she wanted nothing further to do with him and certain threats were made to her. While appellant was still in jail the victim began seeing her present husband,

---

*Assigned by the Chairperson of the Judicial Council.

Chuck Hemming, and appellant was aware of this. By the time appellant was released from jail, Hemming was living with the victim.

On March 20, 1973, the day after appellant's release from jail the second time, the victim was at home with her four-year-old daughter and her daughter's friend. She testified that she answered a knock on the door seeing a friend of appellant's there, and appellant jumped from a bush at the side of the house and pushed his way in. The victim testified that appellant asked where Hemming was and after the victim responded he was not there, appellant stated he was going to kill Hemming and commenced beating the victim. The victim fled the premises, but was forced back inside and beaten even more severely. A neighbor called the police. The victim testified that when they arrived she did not tell them that appellant had been the one who had beaten her, because he told her he would kill her daughter if she told the police what had happened. On the following day, when she knew her daughter was safe, she gave a recorded statement to the police accusing the appellant.

The victim was treated for 20 days in the hospital, receiving plastic surgery and treatment for two broken jaws, broken nose, fractured skull and crushed cheek bones. In addition, all of her front teeth had been knocked out and she had facial cuts requiring hundreds of stitches.

Appellant's defense, supported only by his own testimony, was that a third person was in the victim's home when he arrived and, after a fight with the third person, the appellant lost consciousness. He testified that when he revived he saw the victim in the beaten condition with the third party leaving by the back door.

■ Appellant's first contention of error is that the trial court should have given the instruction concerning the application of circumstantial evidence to the determination of a specific intent a second time. The jury was instructed that in the crime of burglary there must exist a union of the act and the necessary specific intent to "commit a felony, to wit: assault by means likely to produce great bodily injury."

Thereafter, CALJIC No. 2.02 was given as follows:

"The specific intent with which an act is done may be shown by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in Count I, unless the proved

circumstances not only are consistent with the theory that he had the required specific intent but cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to any such specific intent is susceptible of two reasonable interpretations, one of which points to the existence thereof and the other to the absence thereof, it is your duty to adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

The jury was also instructed that the defendant had been charged with intentionally inflicting great bodily injury in the commission of the burglary and that the jury should determine whether or not the defendant, with specific intent to inflict such injury, did inflict great bodily harm. There was no subsequent instruction concerning the use of circumstantial evidence to determine the specific intent issue raised by the allegation of intentional infliction of great bodily injury in the commission of the burglary. Appellant, citing *People* v. *Salas* (1976) 58 Cal.App.3d 460 [129 Cal.Rptr. 871], contends that this failure compels reversal.

In *Salas,* the defendant was charged with and convicted of robbery (Pen. Code, § 211) with an allegation that it was committed with the intent to inflict injury and great bodily injury was so inflicted (Pen. Code, § 213). There CALJIC instruction No. 2.02 was given with respect to whether the defendant ". . . had the specific intent to permanently deprive the owner of his property . . .", but was not given with respect to the allegation that the robbery was committed with the specific intent to inflict great bodily injury on the victim.

The *Salas* court, in a two-to-one decision, found prejudicial error in giving the instruction with respect to one specific intent determination, but not repeating it in connection with the other.

The *Salas* case can clearly be distinguished from that before us. The use of CALJIC No. 2.02 in *Salas* included a reference only to the specific intent required in the crime of robbery, i.e., ". . . specific intent to permanently deprive the owner of his property. . . ." Here, CALJIC No. 2.02

was given with specific reference to "Count I" which encompasses both specific intent requirements. There is no basis for any claim that the jury could have been misled. This is particularly true where, as here, CALJIC No. 1.01 has been given instructing the jury to view all the evidence as a whole and, further, to consider all the instructions as a whole and regard each in the light of all the others.

Additionally, the facts here can be distinguished from those in the *Salas* case on the basis that both determinations of specific intent here were made upon the same body of circumstantial evidence. Here both determinations of specific intent involved the determination of the intents related to the assault with great bodily harm to the victim, and this was not true under the facts in *Salas*. *Salas* can also be distinguished from this case because the court there also held that the information did not properly charge Mr. Salas with an intent to inflict great bodily injury.

■ Appellant next contends that there was error in including an enhancement in the judgment when the jury verdict did not specifically state a finding that appellant intended to inflict great bodily injury.[1]

The information alleged that appellant, in the course of the burglary, with the intent to inflict such injury, did inflict great bodily injury on the victim as the occupant of the premises burglarized. The jury was instructed that it was required to find appellant had a specific intent to inflict great bodily harm, but the wording in the verdict found only that appellant did inflict such harm upon the victim. In other words, this portion of the verdict included no finding that the injury was intentionally inflicted.

Appellant contends that the form of verdict requires that the enhancement under Penal Code section 461 must be stricken, but cites only cases requiring that a defendant must be charged with an intentional infliction in order to have the sentence enhanced by such a finding.

---

[1]The jury's verdict, in part, read as follows:

"WE, the Jury in the above entitled cause, find the defendant EDWARD JAMES RADIL Guilty of a felony, to wit, a violation of California Penal Code Section 459 (burglary), in that said defendant did enter a residence located at 835 Morse Street in Sunnyvale with intent to commit a felony, to wit, a violation of California Penal Code Section 245(a), assault by means of force likely to produce great bodily injury.

"WE, the Jury, further find that at the time of the commission of the foregoing offense, defendant EDWARD JAMES RADIL did inflict great bodily injury upon Beverly Pederson, an occupant of the premises burglarized."

No objections were made at trial as to the form of verdict and the question was not raised by a motion for new trial. Under those circumstances, the form of the verdict is to be regarded as immaterial where, considering the form of the information and the plea of the defendant, the intention to convict of the crime charged is unmistakably expressed. (*People v. Foogert* (1948) 85 Cal.App.2d 290, 297-299 [193 P.2d 14]; *People v. McKinney* (1945) 71 Cal.App.2d 5, 13-17 [161 P.2d 957]; *People v. Mercado* (1922) 59 Cal.App. 69, 74 [209 P. 1035].)

It is clear that the jury was fully instructed and understood that a specific intent was required to uphold the allegation in question. Therefore, the fact that the form of the verdict did not specifically state that the jury was making such a finding was not prejudicial to appellant. (See Pen. Code, § 1404.) ■ A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court. It must be upheld when, if so construed, it expresses with reasonable certainty a finding supported by the evidence (*People v. McKinney, supra,* 71 Cal.App.2d 5).

■ Appellant also contends that the trial court committed prejudicial error in admitting, over appellant's objection, certain photos of the victim's injuries. Appellant offered to stipulate that great bodily injury had occurred, without prejudicing his defense that it had been caused by a third party. Appellant moved pursuant to Evidence Code section 352 to exclude these photographs and the trial judge, reserving his ruling until after testimony had been taken, denied the motion.

We have viewed the pictures in question and they do not appear to be gruesome, revolting or shocking to ordinary sensibilities. (*People v. Gibson* (1976) 56 Cal.App.3d 119, 135 [128 Cal.Rptr. 302].) Despite the willingness of the appellant to stipulate, the photographs were still relevant as to the credibility of the victim in explaining her fear for her daughter and her physical disabilities as a result of the injuries at the time the police came to her home. The trial judge's determination that the probative value of the photographs outweighed any inflammatory effect cannot be held to be an abuse of discretion under Evidence Code section 352. (*People v. Salas* (1972) 7 Cal.3d 812, 819 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832].)

■ ■ Appellant also contends his right to a speedy trial was denied. This contention requires consideration of some additional facts. The crime was committed March 20, 1973, with a complaint being filed

seven days later and a warrant for appellant's arrest being placed in the interstate police network. Appellant was arrested in Minnesota three times in 1973 and 1974. Each time, a California hold was placed upon him but was dropped at the time of his release.

Appellant was again arrested in Minnesota in August of 1974. However, in the meantime, California charges had been dismissed because the victim could not be located. New charges were filed in October 1974 and on June 18, 1975, when appellant was paroled in Minnesota, he fought extradition until he was brought to California in March of 1976. Appellant contends his right to a speedy trial was denied during the period from the filing of the second complaint in October 1974 until his release on parole in June of 1975. It is unclear from the record exactly when California authorities placed a detainer against appellant within this nine-month period.

Appellant contends that he thought the California charges had been dropped when he was paroled in June 1975, since all prior detainers had been dropped. He had not contacted the police department or the district attorney in California, and never made any demand for trial because, he contends, he thought the charges had been dismissed.

The general principles applicable to appellant's claim are discussed in *People* v. *MacDonald* (1973) 36 Cal.App.3d 103 [111 Cal.Rptr. 266]. The facts were somewhat similar and the court there considered both the federal and state constitutional rights to a speedy trial.

Appellant's federal constitutional rights are derived under the Sixth Amendment to the Constitution of the United States while his state constitutional rights are set forth in article I, section 15 of the California Constitution. Although there is a duality of constitutional rights to a speedy trial, the tests are different. Under the federal Constitution the test is a balancing test by which the court can approach the issue on an ad hoc basis considering four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 116-117, 92 S.Ct. 2182].) The test under the California Constitution, as set forth in *People* v. *Godlewski* (1943) 22 Cal.2d 677 [140 P.2d 381] and the cases following it, is a demand test. If a prisoner has been notified of the lodging of another felony charge, he may not gain immunity by reason of delay in prosecution unless he has made a written demand as provided by Penal Code section 1381. By analogy, this would also be

applicable to Penal Code section 1389. (*People* v. *MacDonald, supra,* 36 Cal.App.3d at p. 116.)

It is clear that the appellant did not demand a trial and, in fact, all the evidence is that he resisted having it take place. Further, where an appellant claims that his California rights to a speedy trial have been violated upon an appeal of his conviction, rather than raising the issue by a pretrial writ, the error must be such that denial of his motion to dismiss resulted in a miscarriage of justice. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 151-152 [32 Cal.Rptr. 44, 383 P.2d 452].) It is evident here that appellant has not shown any prejudice to the fact finding process from the delay in trial and, therefore, he was not denied his California constitutional or statutory rights to a speedy trial.

We therefore examine the balancing test set forth by the United States Supreme Court in *Barker* v. *Wingo, supra,* 407 U.S. 514. As to the factor of length of delay, the maximum delay here was the nine-month period between October 1974 and June 1975. As stated previously, the record is unclear as to exactly when a hold was placed into the interstate network, therefore, the maximum delay may have been less than nine months. In any event, even a nine-month delay would be insufficient for this factor to require a finding of denial of appellant's right to a speedy trial. The record is unclear as to the reason for the delay. It could have been one of several reasons, including inadvertent failure of the California authorities to immediately place a detainer against appellant or the failure of authorities in Minnesota to inform appellant of the existence of a detainer. From the record it appears there may have been other reasons; however, none of these was the kind of reason which the court in *Barker* found to be improper, such as a deliberate attempt to hamper the defense. The third factor discussed in *Barker* was appellant's assertion of the right to a speedy trial and here it is clear no such demand was ever made.

The final factor to examine in applying the balancing test developed by the *Barker* court is that of prejudice to appellant. The court identified three interests of defendant's which the speedy trial right was designed to protect. They were: to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense be hampered. (See *Barker* v. *Wingo, supra,* 407 U.S. at p. 532 [33 L.Ed.2d at p. 118].) None of these interests of the appellant were affected by the delay and, therefore, it would appear there was no prejudice to the appellant. However, in a different

context involving the right to a speedy trial, it has been held that in California there can be prejudice to a defendant already imprisoned by a failure to have a speedy trial on another crime, since, if he is promptly convicted of an additional offense, he may be sentenced to serve a term of imprisonment concurrently with the term already imposed. (See Pen. Code, § 669 and *Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 813 [51 Cal.Rptr. 921, 415 P.2d 809].)

As discussed above, the maximum time complained of was nine months, and it may have been substantially less. Here, as is often true, there would be certain obvious advantages to the appellant to have as great a delay as possible in having his case come to trial. Examples of such advantages are that the memory of witnesses fades, witnesses themselves may no longer be available to testify, and the state may drop the charges, especially when the defendant was no longer within the state. Because of these advantages to appellant, and the fact that appellant invited the result, if not by deliberate action or inaction at the very least by a failure to make any inquiry into the status of the California charges, it does not appear that there was prejudice to the appellant by the claimed delay. Additionally, under the facts of the case, appellant's defense could not have been prejudiced in any way. Under the circumstances, the appellant's federal constitutional rights to a speedy trial were not denied.

■ Respondent concedes that it was improper to sentence appellant for both assault and burglary where the entry for purposes of assault constituted the requisite act for burglary. The entry for purposes of assault and the assault itself formed one continuous transaction. (*People* v. *Medina* (1972) 26 Cal.App.3d 809, 823, 824 [103 Cal.Rptr. 337].) This constitutes a violation of Penal Code section 654.

Under the circumstances, the judgment is reversed insofar as it imposes a sentence for assault and is affirmed in all other respects.

Scott, Acting P. J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 23, 1978.