[Crim. No. 17955. First Dist., Div. Three. May 8, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS WESLEY MORRISSON, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Robert P. Mason and Janet M. Lande, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Franklin D. Elia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—This is an appeal by defendant Dennis Morrisson from a judgment convicting him of violating section 10851 of the Vehicle Code (auto theft), in that defendant unlawfully drove and took a 1973 Volkswagen belonging to a Mr. Steven Welch. Appellant contends the trial court erred in failing to instruct *sua sponte* on the proper use of

uncharged criminal acts and on circumstantial evidence. We disagree and affirm the judgment.

On October 2, 1977, at approximately 3 p.m., Mr. Steven Welch parked his 1973 Karman Ghia, license plate number 866 GKL in his driveway located at 604 Monticello Road in Napa. He left the car unlocked and the key in the ignition as was his custom.

On October 3, 1977, at about 5 a.m., Officer Robert Burden of the Suisun Police Department observed a Karman Ghia being driven at an accelerated rate of speed. The officer followed the car and observed the car pull to the side of the road. He then saw the driver get out, bend down and look under the car and begin working on the car. The officer approached the vehicle and asked the driver the nature of the difficulty. The driver, appellant, replied that he was working on a gearshift lever. Having knowledge that this type of vehicle's gearshift lever could not be repaired from underneath the car, the officer requested identification from both appellant and the passenger in the car. When asked whether the car belonged to appellant, appellant responded that it did not, that it belonged to a person named Derrick. Appellant was unable to supply the last name of "Derrick" or his address. The license plate number of the vehicle was radioed to the Fairfield police and a warrant check was run on the car. The check came back clear. The officer then requested that the registered owner of the car be contacted to determine whether the car had been stolen. The registered owner, unaware of the car's absence prior to notification, told the police that he had not given anyone permission to use or drive his car.

Appellant was placed under arrest, read his *Miranda* rights and waived those rights. He advised the police that he had received the car from someone named Derrick, that he was on his way to return the car to Derrick and that the car was to be returned to West Texas Street Park.

*Defense*

Appellant contended at trial that on October 2, he spent most of the afternoon and evening at the home of his ex-fiancee, Shirley McSwain, in Fairfield. Appellant said that although he made short trips to his friends' homes and his own residence, he was not out of the presence of Shirley or her sister, Cheryl, for any significant period of time. At approximately 1 a.m., on October 3, he left their company.

Appellant testified that at about 6:30 p.m., he and Shirley went to the West Texas Street Park. While Shirley was in the restroom, he saw an old

school acquaintance whom he knew as "Derrick." Upon learning that appellant, having just been released from jail, was without transportation, Derrick offered to lend him his car. They agreed that Dennis would pick up the car at a certain corner. After returning to Shirley's house, appellant met Derrick on the prearranged corner at 2:30 a.m. on October 3. Contrary to appellant, Shirley testified that they did not go to the West Texas Street Park; nor did she see appellant with Derrick. A Derrick Smith called by the defense was given immunity by the prosecution and testified that he neither knew appellant nor owned, or ever claimed to own, a Volkswagen.

### ■ *The Trial Court Did Not Err in Failing to Instruct* Sua Sponte *on the Proper Use of Uncharged Criminal Acts*

Appellant argues that the trial court committed prejudicial error in failing to instruct *sua sponte* on the limited purpose for which evidence of uncharged other offenses should be received by the jury (CALJIC No. 2.50). The uncharged other offenses were appellant's conviction for joyriding (a misdemeanor) and grand theft auto. These acts were brought out by defense counsel in direct examination of appellant. The district attorney elicited without objection the sentences received for each conviction, plus the occurrence of a probation violation for the auto theft. Appellant argues that once the evidence was admitted, it was imperative that the jury be instructed that evidence tending to show that the defendant had committed a crime other than the one for which he is on trial could be considered only for a specified purpose and could not be used to show that the defendant had a bad character or had a disposition to commit a crime.

Appellant contends that in a criminal case, the trial court is under an affirmative duty to instruct, on its own motion, on "the general principles of law relevant to the issues raised by the evidence." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) The general principles are " 'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " (*People* v. *Sedeno, supra,* at p. 715.) This point, however, is not in controversy. *People* v. *Harris* (1977) 71 Cal.App.3d 959, 966 [139 Cal.Rptr. 778], holds that "the failure to request CALJIC No. 2.50 or similar limiting instruction as to prior acts or offenses constitutes a waiver to have such an instruction given. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 456 . . . ; *People* v. *Holbrook* (1955) 45 Cal.2d 228, 233 . . . ; *People* v. *Jackson* (1975) 45 Cal.App.3d 67, 70 . . . ; *People* v. *Williams* (1970) 11 Cal.App.3d 970, 978 . . . .) If appellant . . . desired a limiting instruction . . . it was his duty to request it since the court had no *sua*

*sponte* duty to give such an instruction to begin with." *People* v. *Holbrook* (1955) 45 Cal.2d 228, 233 [288 P.2d 1], held that "[i]t is true that in some situations a court must, of its own motion, instruct upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence (see *People* v. *Yrigoyen, ante,* pp. 46, 49 . . . ; *People* v. *Buffum,* 40 Cal.2d 709, 724 . . .), but the court, in the absence of a request, was not required to give an instruction limiting the purposes for which the evidence could be considered."

Respondent correctly notes that it was appellant who brought to the attention of the jury his past convictions for grand theft and joyriding. Therefore, appellant should have requested a limiting instruction. Appellant's failure in this regard constitutes a waiver. Accordingly, the trial court did not err.

### ■ *It Was Not Error for the Court to Fail to Instruct* Sua Sponte *on Circumstantial Evidence*

Appellant argues that the failure of the court to give CALJIC No. 2.02 explaining the use of circumstantial evidence with respect to proof of mental state, in face of the obvious reliance by the prosecution upon such evidence constitutes error. It is appellant's contention that the prosecution was required to prove that appellant took Mr. Welch's car with the specific intent to deprive him of its use. However, since the vehicle was not observed being driven off and since appellant did not admit of any intent to deprive Mr. Welch of the car, appellant argues that the proof of these elements rested upon circumstantial evidence; i.e., that the car was driven without permission, that appellant was seen driving the car, and that he could not account realistically for its possession.

The thrust of the argument can be restated as follows: (1) the crime of auto theft requires specific intent to deprive the victim of possession of the vehicle; (2) such an intent can only be proven by circumstantial evidence; and (3) therefore the failure to give an instruction on circumstantial evidence resulted in the jury misunderstanding the consideration it must accord such evidence.

Appellant cites *People* v. *Salas* (1976) 58 Cal.App.3d 460, 472 [129 Cal.Rptr. 871], for the proposition that the circumstantial evidence instruction expresses the "well recognized principle of our criminal law that where the evidence offered to establish an element of a crime consists principally of circumstantial evidence, it is essential to justify a conviction that ' "the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other

rational conclusion." ' " Appellant next relies on *People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 49 [286 P.2d 1], where the court said, "the court on its own motion should have given an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion."

Although *People* v. *Yrigoyen, supra,* 45 Cal.2d 46 and *People* v. *Salas, supra,* 58 Cal.App.3d 460, are cited by appellant for the proposition that a circumstantial evidence instruction must be given as to the specific intent, they must be read in light of *People* v. *Malbrough* (1961) 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30] and *People* v. *Wiley* (1976) 18 Cal.3d 162 [133 Cal.Rptr. 135, 554 P.2d 881].

In *Yrigoyen,* the defendant was charged with a violation of Penal Code section 476a, issuing a check with intent to defraud and with knowledge of insufficient funds for payment. The facts were that the defendant drew a check on October 7 in the sum of $11,260 in payment on the purchase price of certain cattle. On October 7 and on October 14, when the check was presented for payment, defendant had less than $1,100 on deposit in the bank upon which the check was drawn, nor had defendant and the bank entered into any credit arrangement to cover the check. It was a reasonable inference that defendant knew that he had insufficient funds for payment of the check at the time he drew it. Thus, it was reasonable to infer that the check was drawn with the intent to defraud. On the other hand, the evidence also showed that defendant had entered into an agreement to resell the same cattle on October 5, received an $8,000 check as part payment, which check had been delivered on October 5 to the bank for deposit but was not entered in the bank records until October 10. The evidence further showed that on October 9, defendant received a check for $5,566, the balance of the resale price, and that check was deposited on October 10. From this evidence, it could reasonably be inferred that defendant did not intend to defraud on October 7, but intended to cover the check he drew with the proceeds from his resale. As a matter of logic and human experience, then, two *rational* inferences could be drawn from the evidence, one pointing to the existence of the intent to defraud and the other to its absence. Clearly, in *Yrigoyen* the circumstantial evidence instruction would have been appropriate.

In *People* v. *Salas, supra,* 58 Cal.App.3d 460, appellant was charged with robbery with intent to inflict injury. The victim testified that he went into the restroom of a bar. No one else was there. A few seconds later, appellant entered, struck the victim in the face, knocking him to the floor. Appellant continued to strike him and kick him. Appellant then took

$100 from the victim's pockets and left. The victim suffered a broken nose, had a tooth knocked out and required several sutures.

The trial court gave CALJIC No. 2.02 with regard to the specific intent to permanently deprive the victim of his property but did not give the same instruction with regard to the specific intent to inflict great bodily injury.

The court, relying on *People* v. *Bender* (1945) 27 Cal.2d 164 [163 P.2d 8] and *People* v. *Yrigoyen, supra,* 45 Cal.2d 46, held it prejudicial to fail to instruct on the effect of circumstantial evidence with regard to the specific intent to commit great bodily injury where the court had given that instruction with respect to the specific intent to permanently deprive the owner of his property.

In *Salas,* it is arguable that two reasonable inferences could be drawn from the circumstances of the assault upon the victim. Clearly, the assailant intended no good to his victim but, arguably, he intended to commit *injury* but *not great bodily injury.*

If *Salas* attempts to suggest that a circumstantial evidence instruction must be given merely because there exists an element of specific intent in the crime charged, it is not a proposition supported by the more current Supreme Court holding in *People* v. *Wiley, supra,* 18 Cal.3d 162.

In *People* v. *Malbrough, supra,* 55 Cal.2d 249, the defendant was charged with robbery. Robbery requires the specific intent on the part of the perpetrator to permanently deprive the victim of the property taken. The evidence indicated that the defendant had been observed holding the victim while a confederate ran his hands through the victim's pockets. No circumstantial evidence instruction was given. The high court gave short shrift to the argument that the trial court should have, *sua sponte,* instructed on circumstantial evidence with regard to specific intent. Somewhat cryptically in *Malbrough,* the court simply said the evidence was primarily direct evidence.

In *People* v. *Wiley, supra,* 18 Cal.3d 162, the court articulated a synthesis of what seemed to be disparate lines of cases. The court held that, "The fact that the elements of a charged offense include mental elements that must necessarily be proved by inferences drawn from circumstantial evidence does not *alone* require an instruction on the effect to be given such evidence however. The contrary is usually the rule." (18 Cal.3d at p. 175; italics added.)

In support of its position, the *Wiley* court cited *People* v. *Malbrough, supra,* 55 Cal.2d 249, *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], and other cases. The *Wiley* court went on to say that in *Yrigoyen,* circumstantial evidence was consistent with two rational conclusions, one pointing to innocence and the other to guilt and, therefore, the failure to give the instruction resulted in reversible error.

The facts in *Wiley* were as follows: appellant had been charged with murder by torture. An element of the offense is the intent to cause the victim cruel pain and suffering. The evidence showed that appellant's brother hit the victim, who was appellant's husband, first, with a baseball bat and then with a hammer, each of which was handed over by appellant to her brother. Then appellant hit her husband a number of times with the bat. Appellant testified that she did not intend to hurt him. Appellant contended that, *sua sponte,* the trial court should have given a circumstantial evidence instruction. The court's response was "the evidence was not reasonably susceptible of an interpretation that there was no intent to cause cruel pain and suffering. Thus, it cannot be said that the People substantially relied on circumstantial evidence, *or that the nature of the circumstantial evidence relied on was such that it was equally consistent with a reasonable conclusion that appellant was innocent of first degree murder* on a murder by torture theory." (*People* v. *Wiley, supra,* 18 Cal.3d 162 at p. 176; italics added.)

Returning to the facts of the instant case, the evidence does not support a suggestion that appellant's conduct in taking the car was susceptible of an intent other than to deprive its owner thereof. The facts elicited at trial showed that when appellant saw the police, he stopped the car and feigned a mechanical malfunction in the car's gearshift; and then when asked whom the car belonged to, he was unable to give the last name or the address of the party he claimed had loaned him the car.

As stated previously, when the only inference to be drawn from circumstantial evidence points to the existence of a requisite mental state, a circumstantial evidence instruction need not be given *sua sponte.*

We therefore conclude that the trial court did not commit error when it failed to instruct *sua sponte* on the proper use of uncharged criminal acts and *sua sponte* on circumstantial evidence.

Assuming arguendo that the failure to instruct *sua sponte* was error, the standard which must be used to judge such error would be that articulated in *People* v. *Watson* (1956) 46 Cal.2d 818, 834 [299 P.2d 243]. "No judgment shall be set aside, or new trial granted, in any case, on the

ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (*Id.;* italics omitted.)

After careful examination of the entire record we conclude that there is no miscarriage of justice herein.

The judgment is affirmed.

Scott, J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1979.