[No. C004251. Third Dist. June 16, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN LAUREN NELSON, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Carolyn Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—Defendant was convicted after a jury trial of burglary (Pen. Code, § 459) and two counts of felonious assault respectively upon Inez McLeod and Jay Donald McLeod. (Pen. Code, § 245, subd. (a).) He was sentenced to the six-year upper term for burglary and a four-year upper term for each assault. The court ordered the terms to run consecutively and stayed all but one-third of the middle term on the assault counts. (Pen. Code, § 1170.1, subd. (a).)

In the published part of this opinion we shall reject defendant's contention that the sentence violates Penal Code section 654 because the burglary and the assaults were part of an indivisible transaction committed with a single purpose.

The victims, Mr. and Mrs. McLeod, lived in Grass Valley. Mr. McLeod, a gold miner, kept a large amount of gold and cash in his back bedroom. The McLeods were asleep in their Grass Valley home when Mrs. McLeod was awakened by the sound of glass shattering in the back bedroom. She got out of bed, turned on the ceiling light, and saw intruders. She wakened her husband, who armed himself with a handgun from under his pillow and went to the back bedroom. One of the intruders came into the McLeod's bedroom and hit Mrs. McLeod over the head with a bludgeon of some type, most likely a baseball bat. The assailant then jumped on the bed, knocked out the ceiling light, and retreated to the back bedroom.

Mr. McLeod found two men in the back bedroom. He fired at one of them who exclaimed, "You shot me." Mr. McLeod was then struck from behind and kicked.

Mrs. McLeod picked up the telephone, found it to be out of order, and screamed for help. One of the intruders returned from the back bedroom and broke a chair over her head. He then beat her with pieces of the chair and with the telephone. When her assailant returned to the back bedroom, Mrs. McLeod left the house and contacted the police.

Before trial, William Ward entered a plea of guilty to first degree burglary of the McLeod residence. Pursuant to a plea bargain, Ward was granted probation and testified for the prosecution.

Ward testified that Emmet Boyer, a former superintendent of the mine at which Ward worked, approached him with a plan to steal the McLeod's gold and money. Ward suggested the plan to defendant, who said he was

interested. Defendant and Ward agreed upon David Hill as a third participant.

Defendant, Hill and Ward drove to Grass Valley and "cased" the McLeod home, returning later to burglarize it. Hill and Ward both testified that the plan was that Hill would knock on the door, "knock out" whoever answered, run inside, and "knock out" the other occupant. Hill went to the door and Mr. McLeod answered his knock but after talking to him for about 15 minutes Hill became nervous and decided not to go through with the plan. The three men left Grass Valley that night.

Thereafter Hill withdrew from the conspiracy. Ward and defendant decided that Eddie Manes would take Hill's place. Manes, defendant and Ward met in a Grass Valley motel where they planned the burglary. Defendant instructed Manes to "go in and knock 'em out." Manes agreed to bring a baseball bat. According to the plan, defendant was to "put deer bags over their heads and tie 'em up."

Ward testified that he, defendant and Manes went to the McLeod residence. Manes cut the telephone wire. While Ward stood watch, defendant and Manes removed a window screen and entered the house. Ward heard noises within the house and ran away, eventually returning to the motel where he found defendant and Manes. Defendant said he had been shot and showed Ward a wound on his arm. Defendant stated he hit Mr. McLeod over the head with the fire extinguisher and Manes disclosed he hit Mrs. McLeod with a baseball bat and a telephone. Defendant complained they had gotten nothing but a tin box containing a fishing lure and Mr. McLeod's pistol.

## I

■ ■ ■ ■ ■ Citing *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], and similar cases, defendant argues that all three crimes were incident to an indivisible plan and objective and he was therefore subject to only one punishment.[2] The People acknowledge that the evidence demonstrates there was a "plan to break into the victims' house, knock out the victims, and then rob them of money and gold." Citing *People* v. *Radil* (1977) 76 Cal.App.3d 702, 713 [142 Cal.Rptr. 233], which held that a defendant who entered the victim's home for the purpose of committing the assault could not be punished for both burglary and assault,

---

[2] Defendant's contention is made for the first time on appeal. However, the "waiver doctrine does not apply to questions involving the applicability of [Penal Code] section 654." (*People* v. *Perez, supra,* 23 Cal.3d at pp. 549-550, fn. 3.)

the People concede that punishment for the assault on Mr. McLeod is precluded by Penal Code section 654.

The People also concede, tacitly, that the first assault on Mrs. McLeod, which occurred immediately after the burglars entered the house, was part of the same plan and was therefore not separately punishable. Citing *People v. Vidaurri* (1980) 103 Cal.App.3d 450 [163 Cal.Rptr. 57]; and *People v. Jenkins* (1987) 196 Cal.App.3d 394 [241 Cal.Rptr. 827], the People argue that the second assault on Mrs. McLeod involving the chair and the telephone was an "afterthought" and a "gratuitous act of violence" for which separate punishment may be imposed.

We disagree with both the defendant and the People. The evidence supports the inference defendant entertained discrete objectives with respect to the three crimes and therefore he may be separately punished for each.

Penal Code section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

■ The proscription against double punishment contained in Penal Code section 654 is applicable ". . . where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People v. Perez, supra,* 23 Cal.3d at p. 551.)

"[W]hether the acts of which a defendant has been convicted constituted an indivisible course of conduct is primarily a factual determination, made by the trial court, on the basis of its findings concerning the defendant's intent and objective in committing the acts." (*People v. Ferguson* (1969) 1 Cal.App.3d 68, 74 [81 Cal.Rptr. 418].) ■ Although the court made no express findings on the issue, a finding that defendant's crimes were divisible inheres in the judgment. If that implied finding is supported by the evidence, it must be upheld.

If defendant's only object was to steal the victims' gold and money, he could have accomplished that simply by waiting until they were away to enter their home. A rational plan designed to accomplish theft alone would rely on stealth instead of violence. Confronted by nocturnal intruders with, for all they know, murderous designs, victims are often inclined to fight

back, occasionally with the serendipitous consequence that the intended theft of their property is frustrated. Indeed, frustration of theft is such an obvious, inherent risk in the predictable resistance of residents to nocturnal intruders that it strongly suggests defendant and his cohorts were not bent upon thievery alone. On this record, it is reasonable to infer, as we assume the trial judge did, that theft was not the burglars' only object and purpose. Rather, they deliberately chose to enter the McLeod residence while the victims were at home, knowing as they must that their presence reduced the chances of a successful theft, because separate and apart from thievery they intended to inflict physical harm upon the victims.[3] Therefore defendant is deserving of the more serious punishment without benefit of the mitigating effect of Penal Code section 654.

## II*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Evans, J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 21, 1989. Broussard, J., was of the opinion that the petition should be granted.

---

[3] The charge of burglary in the information alleged that defendant entered the victims' home with the intent to commit theft. Unlike *People* v. *Radil, supra,* 76 Cal.App.3d 702, the intent to commit felonious assault was not charged as an element of the burglary.

*See footnote, *ante,* page 634.