Filed 9/12/13  P. v. Navarro CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>LIBRADO NAVARRO et al.,<br><br>　　　Defendants and Appellants. | B234703<br><br>(Los Angeles County<br>Super. Ct. No. GA077436) |

　　　APPEAL from judgments of the Superior Court of Los Angeles County, Suzette Clover, Judge.  Affirmed and modified with directions.

　　　David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant Librado Navarro.

　　　Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant Mauricio Vasquez.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General,  Margaret E. Maxwell and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

Librado Navarro (Navarro) and Mauricio Vasquez (Vasquez) appeal from the judgments entered following a jury trial. Navarro was convicted of two counts of felonious assault (former Pen. Code, § 245, subd. (a)(1)[1]; counts 2 and 4) and of hit and run, a misdemeanor (Veh. Code, § 20002, subd. (a); count 3). Vasquez was convicted of two counts of felonious assault (§ 245, subd. (a)(1); counts 1 and 2) and of simple assault, a misdemeanor (§ 241, subd. (a); count 4). As to each appellant, the trial court imposed two concurrent, lower terms of two years in state prison. For the misdemeanors, it sentenced appellants to respective terms of five days and one day in the county jail, with credit for time served.

Navarro contends the jury verdicts do not conform to the prosecutor's factual theory of the case, and appellants join in making a number of contentions concerning the sentencing proceedings.

**BACKGROUND**

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the trial evidence established the following.

1. *The trial evidence.*

    a. *The prosecution's case-in-chief.*

At about 2:00 a.m. on May 6, 2009, following Cinco de Mayo celebrations, brothers Miguel Keener (Keener) and David Sandoval (Sandoval) walked their cousin, Maritza Toscano (Toscano), and Keener's girlfriend, Cynthia Vasquez (Cynthia V.), to Cynthia V.'s Honda. During the evening, they had been celebrating with others in the

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated. In 2009, section 245 provided that both assault with a deadly weapon, other than with a firearm, and assault by means of force likely to produce great bodily injury were the crimes proscribed in subdivision (a)(1) of that section. (Stats. 2004, ch. 494 (A.B.50), § 1.) Subsequently, section 245 was amended to provide that assault with a deadly weapon other than a firearm was the crime proscribed in subdivision (a)(1) and that assault by means of force likely to produce great bodily injury was the crime proscribed in subdivision (a)(4). The punishment for these crimes was not changed. (See Stats. 2011, ch. 15 (A.B. 109), § 297, eff. April 4, 2011, operative Jan. 1, 2012.)

Ambiente night club on Garfield Avenue in Alhambra and drinking alcoholic beverages. Keener testified that he was not intoxicated; Sandoval admitted intoxication but said he was oriented as to time and the surrounding events. They were walking down an alley behind the nightclub to its parking structure where Cynthia V.'s Honda was parked on the first level. The area was crowded with young people after the nightclub had closed.

Navarro, the driver, and Vasquez, the right front passenger, drove up in a Lexus. They were driving the area looking for women and flirted with Toscano or Cynthia V. Keener told them to get going. Then Sandoval said something similar. Vasquez said "What are you going to do about it?" and Sandoval replied, "This is over. Take it home," or "You don't want this." Vasquez responded by using a backhand fist to rap Sandoval on the chin with his knuckles. Sandoval turned and started punching Vasquez through the open window of the Lexus. Vasquez tried to get out, but Sandoval leaned on the door.

As the youths exchanged blows through the car window, Navarro sped up and drove up the parking structure ramp to an area near the Honda and parked in a stall. Cynthia V. dragged Keener away from the fray to her Honda. There was conflicting evidence concerning whether at that point, Keener opened the Honda's trunk; at trial Keener denied having done so.

Sandoval jogged to the Lexus's passenger window as he believed parking the Lexus meant that appellants were going to come after him. Vasquez and Sandoval again exchanged blows through the window, and Sandoval leaned on the Lexus's passenger door, preventing Sandoval from getting out of the Lexus. Eventually, Vasquez got out. However, as soon as Navarro parked the Lexus, Navarro quickly walked to the Lexus's passenger side. He blindsided Sandoval with a blow over the right eye, knocking Sandoval to the ground. As Navarro approached Sandoval, Cynthia V. saw an object in Navarro's hand that she described as a closed knife that was burgundy in color. She yelled out that the driver had a knife.

3

Sandoval did not see Navarro but looked up after he fell and determined that Navarro was the person who had blindsided him.  Vasquez and Navarro beat Sandoval two-on-one, and Vasquez kicked Sandoval at least twice in the face, preventing him from standing.  During the beating, Navarro was crouched over Sandoval, and Sandoval recalled Navarro hitting him with two downward blows.  Navarro had an "object" in his hand when he hit Sandoval.  Sandoval yelled out to his brother Keener for help.  Toscano, the brothers' cousin,  ran over and punched at Vasquez.  Keener ran over with a four-pronged tire iron in hand and swung it in Vasquez's direction, but missed.  A bystander immediately removed the tire iron from Keener's hand.

Keener, now unarmed, punched and pushed appellants away from Sandoval, who was still on the ground.  Keener exchanged a few blows with Vasquez.  Suddenly, Navarro punched Keener in the ribs.  Keener looked at him and saw that Navarro had a knife with a black handle and a 3- to 4-inch blade in his hand.  Keener helped Sandoval up and told him, "Be careful.  This guy has a knife."  Vasquez and Navarro backed off, and one of them said, "Let's go."  Appellants quickly entered the Lexus and drove off.

While driving off, Navarro backed into a BMW, causing damage, but Navarro failed to stop and identify himself.

Immediately after the fight, Keener noticed that he was bleeding and discovered a stab wound in his ribs, the same location where Navarro had punched him.  Sandoval discovered that he had two straight, clean, shallow slices to his shoulder and in the area of his eyebrow, the same areas where Navarro had hit him with some instrumentality.

A bystander, Edwin Alvarez (Alvarez), the night club's disc jockey, testified that he saw the original fisticuffs but could not say who had initiated the physical interaction.  Then he saw appellants punching and kicking, two-on-one, Sandoval for 40 seconds to a minute.  Sandoval was on the ground, and Sandoval could do little but fend them off.  During the melee, Alvarez saw one of the appellants holding a knife or a screwdriver in hand, but did not know whether the knife was used to strike anyone or was merely used as a "scare tactic."  His impression was that when Keener joined the melee, Keener was merely breaking up the fight.

The BMW's driver gave the police the Lexus's license plate number. Alhambra Police Officer Tai Seki (Officer Seki) contacted Keener and Sandoval at the hospital. Keener was treated by a doctor there and given two staples to close the stab wound to his torso. Sandoval was not treated. Officer Seki took photographs of Keener's and Sandoval's wounds, and at trial the photographs were entered into evidence.

Shortly after the stabbing, Keener identified another youth but not Navarro in a photographic lineup. Keener testified that immediately after the melee, he believed it was Vasquez who had stabbed him. However, after talking with the other witnesses, he had concluded that it was actually Navarro who was his assailant.

b. *The defense.*

At trial, Navarro declined to testify. His trial counsel argued self-defense.

In defense, Vasquez testified, claiming self-defense and defense of others. He said that Sandoval started the melee by punching him inside the Lexus in the alley; he denied initiating the physical force. He explained that one of the women walking in the alley had spoken to him. Keener and then Sandoval approached and made comments to appellants. Sandoval pummeled Vasquez several times through the passenger window, and Vasquez parried the blows. Navarro parked in the structure. Sandoval ran to the Lexus, again pummeling Vasquez through the window, preventing him from getting out. Vasquez eventually got out the door. He saw Sandoval in a crouched position, lunging at Navarro. Sandoval punched Navarro, and Navarro swung and missed Sandoval. Sandoval punched Navarro again, and Vasquez kicked Sandoval in order to defend Navarro.

As appellants fought Sandoval two-on-one, Keener approached and swung a tire iron at Navarro and missed. Keener then swung the tire iron at Vasquez, and Vasquez pulled out his black-handled work knife, which had a half-inch to one-inch blade. He used his knife only to defend himself and Navarro by slicing Keener in the ribs. Vasquez yelled, "Let's go," and appellants quickly drove off. The two phases of the fight, before and after Navarro parked the Lexus, each lasted only two to three minutes.

5

At trial, Vasquez admitted that he had been drinking alcoholic beverages and denied that Navarro had backed into or damaged the BMW.

A month after the incident, when Vasquez was interviewed by Officer Seki, Vasquez failed to mention that he used the knife in the melee. He told the officer that he exchanged punches with Sandoval before Navarro parked and admitted that Navarro came around the Lexus, swung at Sandoval and knocked Sandoval to the ground. During the interview, Vasquez also told the officer that Keener swung the tire iron once and only in Navarro's direction.

2. *The motion for new trial and the sentencing proceedings.*

a. *The motion for new trial.*

On the date set for sentencing, pursuant to section 1181, subdivision 6, appellants moved for a new trial on grounds the evidence was insufficient to support the verdicts. At the hearing on motion, trial counsel argued the evidence indicated Sandoval had started the altercation, Vasquez was pinned in the Lexus until it parked, and he and Navarro acted in self-defense or defense of others. Vasquez's trial counsel urged that the jury "simply got it wrong" and asked for a new trial.

The prosecutor responded that the evidence amply supported the verdicts. At best, the instant case was one of mutual combat, and the trial court had properly instructed the jury as to self-defense and defense of others. The trial evidence had demonstrated that after parking, appellants kicked and pummeled Sandoval two-on-one. Vasquez never retreated so as to enable him to assert self-defense after mutual combat. Keener acted in defense of Sandoval in breaking up the melee.

The trial court denied the motion. It commented that in its view, Sandoval started "all of this." It said that it had researched the standard for granting a new trial. Notwithstanding its personal view of the evidence, it had concluded that there were a "myriad of problems" that might result in reversal on appeal, but "those issues [did not] meet the standard of granting a new trial."

6

b. *The sentencing proceedings.*

The trial court said that it had considered appellants' sentencing memoranda and probation reports, as well as the letters from community members who wrote to the trial court in support of appellants.

The probation officer stated in the probation report that Navarro was 25 years of age and had three 2006 and 2007 misdemeanor convictions for driving with a suspended driver's license. (Veh. Code, §14601.) Navarro also had a more recent conviction for driving with more than 0.08 percent by weight of alcohol in his blood. (Veh. Code, § 23152, subd. (b).) Navarro lived with his parents in El Monte and was attending a fifth year of college at the California State University San Bernardino. He worked for a Whittier heating and air business.

The probation officer asserted the following aggravating factors: (1) Navarro played a significant role in the offense, (2) his conduct indicated that he was a threat to the community and (3) his prior convictions were numerous or of increasing seriousness. Victim Keener had informed the probation officer that he could not walk for two weeks after the attack and he had made a full recovery from the stabbing. Both victims said they had missed work at least for several days. Nevertheless, the probation officer concluded, without a statutory prohibition, Navarro was suitable for probation as (1) he had a minimal criminal history, (2) he would be adequately supervised in the community and (3) he may benefit from the rehabilitative resources available on probation. As the offense was serious, if probation was granted, the probation officer recommended an order that Navarro spend a year in the county jail.

Vasquez's probation report said that he was 25 years old and had no criminal history. He denied a history of drug or excessive alcohol use. He lives with his parents in Mira Loma and grew up in El Salvador before coming to the United States in 1990. He is single and a high school graduate with some community and junior college. He intends to return to college to study business administration. He had been employed for the last three years, initially as a salesman and most recently as an office assistant. Absent a statutory prohibition, the probation officer recommended a grant of probation

7

due to (1) the lack of record, (2) Vasquez could be adequately supervised in the community and (3) he may benefit from the rehabilitative resources available while on probation. In mitigation, the probation officer cited his lack of a criminal record. In aggravation, the probation officer proffered the following aggravating factors: (1) the violent nature of the offense and that (2) the conduct indicates Vasquez presents a serious danger to society. Were Vasquez to be imprisoned, the probation officer recommended an upper base term. If probation were to be granted, the probation officer suggested he be required to spend a year in the county jail as a condition of probation.

Additionally, the probation officer stated in his reports that Officer Seki had no objection to grants of formal probation. The officer told the probation officer that he believed that Navarro was Keener's assailant, and Vasquez was taking the blame for the stabbing. [2]

---

[2] Navarro's sentencing memorandum requested a grant of formal probation and community service. It asserted that Navarro's was an "unusual case" (§ 1203, subd. (e)(2)) permitting probation based on mitigating factors: (1) the incident was spontaneous and impulsive, as contrasted with being "criminal[ly] sophisticat[ed]" (Cal. Rules of Court, rule 4.414(8)); (2) the crime was a result of "great provocation, which is unlikely to recur" (Cal. Rules of Court, rule 4.414(1)(7)); (3) Navarro had no felony history or history of violence (Cal. Rules of Court, rule 4.414(b)(1)); (4) he is willing to comply with the terms of probation and is capable of doing so (Cal. Rules of Court, rule 4.414(b)(3)); (5) his ability to continue with graduate school may be hindered by imposition of a prison term (Cal. Rules of Court, rule 4.414(b)(6)); and (6) if not imprisoned, he was not a danger to others (Cal. Rules of Court, rule 4.414(b)(8)). It revealed that Navarro is a full-time student in kinesiology, taking his last few classes in order to graduate before hopefully attending graduate school in exercise science at California State University, Fullerton. One of the letters attached to the sentencing memorandum indicated that in 2003, Navarro attended Menlo College in Atherton on a football or baseball scholarship. He then transferred to California State University, San Bernardino.

Vasquez's sentencing memorandum requested a grant of formal probation. Vasquez indicated that he is a United States citizen. Since January 2009 he has been employed at Landjet Motor Carriers, Inc. He asserts that his is an "unusual case" (§1203, subd. (e)(2)) and set forth the following mitigating factors: (1) he participated in the offense under circumstances of great provocation, not amounting to a defense, in that he was being pummeled while belted into the Lexus's car seat and then later only acted in

8

At the outset, the trial court gave the parties an opportunity to comment on all matters relevant to sentencing. Navarro and Vasquez requested a section 17, subdivision (b), reduction in the felonious assault charges, wobblers, to misdemeanors. Navarro's counsel proffered that the motion was supported not just by the lack of a significant criminal history, but also as there were "problems with the case." He also noted there were defense witnesses who had appeared for the sentencing proceedings but that numerous continuances had prevented their attendance for the actual sentencing hearing.

The trial court acknowledged that continuances had deterred the defense character witnesses from appearing at sentencing. It said that it would consider that all persons submitting letters on appellants' behalf would have appeared and testified favorably to "[appellants'] good citizenship." It said "Sadly, I think . . . Navarro and . . .Vasquez were at the wrong place at the wrong time. I don't think they were the aggressors. But having not found grounds for a new trial, I believe that this court has to

---

self-defense with the knife when he was confronted by Keener; (2) he has no recent record of committing crimes of violence; (3) he is young and has no prior criminal record; (4) the crime is unlikely to reoccur; (5) the crime fails to demonstrate criminal sophistication; (6) he is willing to comply with the terms and conditions of probation; (7) his parents depend on him to assist them in paying the mortgage on the family home, and if incarcerated, he will lose his job; (8) imprisonment will affect his plans to attend college; and (9) imprisonment is unnecessary to protect public safety. (Cal. Rules of Court, rule 4.414.) In a statement attached to the sentencing memorandum, Vasquez indicated that financial issues had interfered with his high school football ambitions and getting a football scholarship for college. Attending community college was interrupted as he had to assist the family in paying for medical care for his mother.

In the People's Sentencing Memorandum, relying on California Rules of Court, rule 4.414, the prosecutor urged the following aggravating factors: (1) the crimes were serious in nature; (2) appellants used weapons; (3) Sandoval was particularly vulnerable as he was outnumbered two to one and was unarmed; (4) Sandoval and Keener suffered physical injury, and Keener incurred medical costs in treating his stab wound; and (5) appellants' conduct demonstrated a willingness to use deadly weapons, thus posing a danger to the community. In mitigation, the prosecutor acknowledged that Navarro had a minimal record and Vasquez had none.

9

live with the jury's findings." It told appellants that it also had researched the issue of reductions in the charges but did not "think that it was appropriate."

The trial court asked whether trial counsel had anything to add before it pronounced sentence. Vasquez's trial counsel requested the sentences "be stayed so that at some point later, [appellants could] request the court to reduce it to misdemeanors." The trial court said that it would consider the request. The prosecutor objected to a section 17, subdivision (b), reductions, in that the offenses were serious assaults, there were injuries and the assault with a deadly weapon convictions constituted "strikes" under the three strikes law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

The trial court had appellants waive formal arraignment and time for sentencing and commenced sentencing.

The trial court acknowledged that it had discretion to grant probation as this was an "unusual case." (§ 1203, subd. (e)(2).) But it explained: "So given the facts of this case, [Navarro] and [Vasquez] are ineligible for probation. Not so much the facts of the case, but the nature of the charges and the findings of the jury and the jury's verdict."

The trial court enumerated the jury's verdicts. It found that factors in mitigation outweighed those in aggravation. It referred to appellants' lack of a criminal history and other factors in mitigation: (1) the offenses were not sophisticated, planned or committed with professionalism; (2) the offenses constituted a spontaneous event unlikely to reoccur, and that it could not say the same with respect to Sandoval and Keener; (3) neither appellant was the aggressor; (4) nor had appellants engaged in prior conduct which would indicate they were a danger to society. Based on these factors, the trial court imposed lower terms of imprisonment respectively, on Navarro for counts 2 and 4, and on Vasquez for counts 1 and 2, and imposed the terms concurrently. It imposed time served for Navarro as to the count 3 misdemeanor of hit and run and for Vasquez as to the count 4 simple assault.

10

Having imposed the prison terms, the trial court ordered a stay of execution of those terms pending appeal and set bail on appeal at $500 for each appellant. The trial court explained at length its reasoning for granting bail on appeal. Inter alia, it remarked that in its view, mutual combat was not truly at issue at the trial. It claimed that it regretted not having instructed the jury further on mutual combat. It said, "There is no question whatsoever, based on the evidence viewed most favorably to the People, that . . . Sandoval started all of this. [Sandoval] was somewhere he should not have been. He was under the influence of alcohol hours and hours and hours after this event. [He] would be well-served by an alcohol program [but ] . . . [t]he court has no jurisdiction over him." It asserted that it respected the People's right to exercise their charging function but this was a case in which it was impossible for a trier of fact, including the jury, to determine who was the victim and who was the lawbreaker. Keener's testimony and his out-of-court statements with respect to his use of a tire iron contained numerous inconsistencies, and the tire iron's use could have caused death.

When the trial court indicated that it had concluded the sentencing proceedings, the prosecutor asked for an opportunity to respond concerning sentence and the bail. The trial court told him it was "[in]appropriate at this time." The trial court finished its remarks and told the prosecutor that it did not intend to cut him off, but once the trial court had made its decision, the time for argument "and so forth" had passed. The prosecutor complained that he believed he had had no opportunity to litigate bail on appeal. The trial court told the prosecutor that he "could have asked for that when the court indicated that was its intention." The trial court then made orders concerning restitution and terminated the proceedings.

11

**CONTENTIONS**

1. *Sufficiency of the evidence.*

Navarro contends that the jury verdicts appear to reflect a jury conclusion that Navarro assaulted Sandoval with a knife (counts 2 and 4) and Vasquez assaulted Keener with another knife (count 1). He argues the evidence fails to support the finding implicit in the verdicts that two knives were used. Also, he urges that a two-knife theory is at odds with the factual claims the parties made during final argument as to how the assaults occurred. Navarro urges that accordingly, his convictions in counts 2 and 4 must be reversed.

a. *Standard of review.*

In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. " 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Ochoa, supra*, 6 Cal.4th at p. 1206; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

" 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa, supra*, 6 Cal.4th at p. 1206.)

The same standard of review applies to circumstantial evidence and direct evidence alike. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.)

12

b. *Factual background.*

In count 1, the amended information alleged appellants violated section 245, subdivision (a)(1), the crime of assault with a deadly weapon, in that they "willfully and unlawfully commit[ted] an assault" on Keener "with a deadly weapon, to wit, a knife." In count 2, the information alleged appellants violated section 245, subdivision (a)(1), the crime of "assault by means likely to produce great bodily injury," in that they "willfully and unlawfully commit[ted] an assault . . . by means likely to produce great bodily injury" on Sandoval. Count 3 alleged a misdemeanor hit and run offense.

Before Vasquez's defense testimony, the People moved to amend the information, proposing a count 4, that appellants committed an "assault with a deadly weapon, to wit, a knife" on Sandoval pursuant to section 245, subdivision (a)(1). The trial court granted the motion.

In closing argument, the prosecutor urged that there was no issue of identity presented by the evidence – both appellants were involved in the melee. The prosecutor explained count 1 concerning Keener and counts 2 and 4 concerning Sandoval only applied to the melee as it occurred subsequent to Navarro parking the Lexus. There was the two-on-one event after Navarro hit Sandoval in the head. Sandoval was on the ground, and Vasquez kicked him and Navarro punched him. The prosecutor urged, "The assault did not stop there." He argued that Navarro had an object in hand that he was using on Sandoval. Circumstantially, the object had to have been "[t]he knife" Cynthia V. had seen in his hand. Keener then rushed to Sandoval's aid, and he was punched in the ribs, a blow that Keener later discovers is a knife wound. And Keener saw Navarro with the knife in hand immediately thereafter. Sandoval's wounds were straight and clean, the type one would expect would be left by the use of a knife. The prosecutor acknowledged that Vasquez's testimony was that he had the knife and used it only on Keener. However, the prosecutor argued to the jury that Vasquez's testimony was incredible in some parts, and it did not matter which appellant actually wielded the knife. If one man was the direct perpetrator, the other was equally liable as he had aided and encouraged the assault.

13

In defense, trial counsel urged Vasquez acted in self-defense by stabbing Keener when he was confronted with the tire iron. They claimed no assault with a knife on Sandoval and that appellants merely acted in self-defense or defense of others in response to Sandoval's attack on Vasquez.

The trial court instructed the jury as to the elements of both prongs of the offense of felonious assault and as to lesser offenses of simple assault, as well as to the relevant principles of aiding and abetting, mutual combat, the duty to retreat, self-defense and the defense of others.

After deliberations, the jury returned its verdicts. With respect to the assault charges, in count 1 (stabbing Keener), the jury acquitted Navarro of assault and lesser included offenses, but found Vasquez guilty of assault with a deadly weapon. In count 2 (the two-on-one melee after Navarro parked the Lexus), it convicted both appellants of an assault on Sandoval by means likely to produce great bodily injury. In count 4 (the use of a knife in assaulting Sandoval), it returned verdicts finding Navarro guilty of assault with a deadly weapon and found Vasquez guilty of a lesser included offense of simple assault.

c. *Discussion.*

Navarro's contention lacks merit. Insofar as Navarro's contention is a claim of insufficient evidence, it fails. It is irrelevant to the validity of the verdicts whether one or two knives were used during the events underlying the assaults. When an appellant raises an issue of insufficient evidence, the question this court addresses is not whether a two-knife theory was consistent with the prosecutor's and trial counsels' closing arguments. It is whether the trial evidence is of solid and credible value in supporting a rational conclusion by the jury that the offenses charged occurred.

The witnesses testifying at trial agreed that Vasquez and Navarro engaged in a joint beating and kicking of Sandoval after Navarro blindsided Sandoval. Before the joint beating, Cynthia V. saw Navarro with a closed pocket knife in hand. During the two-on-one beating, Alvarez saw one of the assailants holding a knife or screwdriver. Sandoval had wounds that could have been inflicted with a short-bladed knife, and he testified that Navarro was hitting him during the melee with an object. Keener testified to

14

circumstances suggesting that Navarro stabbed him, and he saw Navarro immediately thereafter with a knife in hand.  Vasquez did testify and admitted that he had stabbed Keener, and he claimed that he did not draw his knife until Keener approached with the tire iron.  There was evidence that Keener may have misidentified Navarro as his assailant, but the jury believed Keener's trial testimony, not that of Vasquez.  On this record, the totality of the trial evidence supports a rational conclusion by the jury that Navarro committed the felonious assaults alleged to have occurred against Sandoval in counts 2 and 4.

Further, the authorities cited by Navarro in support of his claim are inapposite. (See e.g., *Chiarella v. United States* (1980) 445 U.S. 222, 235-236; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  The rule in the *Chiarella-Guiton* line of cases was recently set out in *People v. Harris* (1994) 9 Cal.4th 407, 419 and fn. 7:  " '[W]hen the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others *legally incorrect*, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand.' [Citation.]  In using the terminology 'legally incorrect theory,' [a court refers] specifically to instructional error, or a 'legally incorrect'  theory of the case which, if relied upon by the jury, could not *as a matter of law* validly support a conviction of the charged offense." (*Ibid.,* fn. omitted.)  As Navarro's claim is in the nature of a claim of insufficient evidence, we have no reason to utilize this principle in determining the contention at hand.

And, it is settled that inconsistent verdicts provide no grounds for a reversal where there is sufficient evidence to support the verdicts.  "The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt and juries the power to acquit whatever the evidence." (*People v. Palmer* (2001) 24 Cal.4th 856, 858, 860; see also *Standefer v. United States* (1980) 447 U.S. 10, 25-26; see *People v. Superior Court* (*Sparks*) 48 Cal.4th 1, 12-13.)

15

The evidence, albeit partially circumstantial, is sufficient to support verdicts of assault by means of force likely to produce great bodily injury in count 2 and the assault with a deadly weapon, a knife, in count 4.

2. *Motion for a new trial.*

Vasquez contends the trial court used the wrong standard and abused its discretion in ruling on his motion for a new trial. Navarro joins in the contention to the extent it is of benefit. We find no abuse of discretion.

a. *Standard of review.*

Under section 1181, subdivision 6, a court may grant a defendant's new trial motion when the verdict "is contrary to law or evidence . . . ." The proper standard is whether the court itself is convinced the charges have been proved beyond a reasonable doubt. (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.) As the Supreme Court has explained: "The court extends no evidentiary deference in ruling on a section 1181, [subdivision (b),] motion for new trial. Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge*, who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to [the] . . . evidence.' [Citations.]" (*Ibid.*, italics in original.)

"The trial court 'should [not] disregard the verdict . . . but instead . . . should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.' " (*People v. Davis* (1995) 10 Cal.4th 463, 524.) " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*Ibid.*)

16

b. *Discussion.*

Before ruling on the motion for new trial, the trial court read and considered appellants' written motions discussing the above legal standard. The trial court said that it had researched the motion, indicating it was well aware of the appropriate legal standard. The trial court did not recite the standard into the record, but this court must presume the trial court was aware of and followed applicable law in exercising its discretion. (*People v. Moseley* (1997) 53 Cal.App.4th 489, 496.)

Even assuming that Sandoval started what turned into a physical altercation, denial of the motion is supported by the record. If indeed Sandoval had started the fight, it was appellants who reinitiated it and provoked a fight with the intent to create an excuse for the use of force with a deadly weapon. The fact remains that appellants chose not to leave the alley after the initial contact. Rather, Navarro drove a short distance into the parking structure and parked, and appellants got out of the Lexus, a clear indication they intended to resume the fight. "It is well established that the ordinary self-defense doctrine – applicable when a defendant *reasonably* believes that his safety is endangered – may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified . . . .' [Citation.]" (*People v. Frandsen* (2011) 196 Cal.App.4th 266, 273, quoting *In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1; see also *People v. Valencia* (2008) 43 Cal.4th 268.) Thus, it is a defendant's provocation to create the excuse to use force or his "wrongful conduct" that evidences his intent and deprives him of the right to use self-defense. (*People v. Valencia, supra,* at p. 288.) Although the assaulted person need not retreat, he may not reinitiate a fight after it has stopped.

Here, appellants drove away from Sandoval, who was a pedestrian. Their act of parking was not simply a refusal to retreat but the initiation of a new physical assault intended to be directed at Sandoval. Moreover, at least one of appellants had a knife and appeared ready to use it. The People recognize the argument that appellants should not have parked is somewhat at odds with the trial court's later statements at the end of the

17

sentencing hearing about potential jury confusion concerning the principles of mutual combat. However, the comments were at odds with the trial evidence, and the trial court gave complete instructions on self-defense, defense of others, mutual combat and the duty to retreat. There was no evidence that Keener or Sandoval "pursued" appellants as they drove. Indeed, Keener had walked away with Cynthia V. and Sandoval trotted over to the Lexus driver's door only when it became apparent that appellants were parking to engage in a fight. That appellants, who were in the safety of the Lexus, could somehow claim self defense after once again initiating contact is contrary to law.

It is apparent to this court that although the trial court may have decided the case differently had the parties requested a court trial, it carefully reviewed the evidence presented to the jury and the verdicts and found the witnesses' testimony sufficiently credible to require the jury verdicts to stand.

The remarks of the trial court later in the sentencing proceedings – (1) "[i]t was impossible for the trier of fact, including the jury" to determine which of defendants and victims were at fault, (2) it personally did not believe appellants were the aggressors and (3) there were inconsistencies in Keener's claims about the use of the tire iron – were made in the context of setting out a justification for staying execution of sentence pending appeal and the setting of bail on appeal. These latter findings do not undermine the trial court's ruling on the new trial motion.

3. *Fragmentation of the felonious assault offense alleged in counts 2 and 4.*

Appellants contend the trial court improperly fragmented the felonious assault offense by charging it alternatively, in the language of both prongs of that statute, in counts 2 and 4. We agree.

a. *The applicable law.*

Section 954 provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission or different statements of the same offense . . . under separate counts" and the "prosecution is not required to elect between the different . . . counts set forth in the accusatory pleading . . . ." However, pursuant to section 954, a defendant may not be convicted of multiple counts of the same

18

offense for the same act. (*People v. Coyle* (2009) 178 Cal.App.4th 209, 217 (*Coyle*) [three counts of murder of the same victim tried on different theories may be alleged, but the offense of murder may be punished only once; see also *People v. Jefferson* (1954) 123 Cal.App.2d 219, 221.)

Former section 245, subdivision (a)(1), provides, as follows: "Any person who commits an assault upon the person of another *with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury* shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Italics added; Stats. 2004, ch. 494 (A.B.50), § 1.)

b. *Discussion.*

The amended information alleged Keener's assault by appellants in count 1. It alleged appellants inflicted on Sandoval force likely to produce great bodily injury in count 2. At the opening of the defense case, the prosecutor added a count 4, again an alleged felonious assault in that appellants had assaulted Sandoval with a deadly weapon, "to wit, a knife." Previously, in count 2, the information alleged only that appellants had assaulted Sandoval by means of force likely to produce great bodily injury. Appellants did not demand an election, nor was a formal election made by the prosecutor as to the act or acts underlying counts 2 and 4. No unanimity instruction was delivered to the jury.

In his final argument to the jury, the prosecutor was very specific with respect to the acts he urged fell within counts 2 and 4. He argued that the counts' factual basis was the continuous course of conduct that occurred after Navarro parked the Lexus; i.e., Navarro punched Sandoval on the right side of his head, knocking him to the ground, Navarro hit Sandoval with the "object," the knife, and Vasquez punched and kicked Sandoval in tandem with Navarro in order to keep Sandoval on the ground and to continue besting him in the melee. This part of the assault came to a close when one of the assailants turned and stabbed Keener.

19

There is authority that might support a conclusion that the various independent blows given Sandoval each constitute a separate instance of felonious assault. (See, e.g., *People v. Harrison* (1989) 48 Cal.3d 321, 334.) But where, as here, the allegations of the offense both constitute one of two prongs of the former section 245, subdivision (a)(1), and the prosecution is explicit that the counts address "acts . . . so closely connected as to form part of one transaction," we must conclude that the counts constituted allegations of but one criminal offense. (*Coyle, supra,* 178 Cal.App.4th at pp. 217-218 ; see *People v. Williams* (2013) 56 Cal.4th 630, 682 ( rehg. den. June 19, 2013); *People v. Ervine* (2009) 47 Cal.4th 745, 788; *People v. Stankewitz* (1990) 51 Cal.3d 72, 99.)

In the decision in *People v. Harrison, supra,* 48 Cal.3d 321, the trial court permitted convictions of three different closely related offenses of forcible digital penetration of the female victim within the meaning of section 289. The Supreme Court reasoned that each incident of penetration amounted to a new and separate crime as the penetration "completed the crime." (*Harrison supra*, at pp. 328-330.) However, that decision does not apply in this instance. That court was not addressing the issue of multiple convictions in a felonious assault offense, which are different than sex offenses. Nor was *Harrison* decided in the context of the prosecutor having identified the basis the People's allegations as a continuous course of conduct so closely connected as to form part of one transaction in the absence of an election and the delivery of an unanimity instruction. (*Id*. at p. 333, fn. 10.)

This court concludes that in this instance a consolidation is required and orders count 4 consolidated into count 2. (*Coyle, supra*, 178 Cal.App.4th at pp. 217-218.)

4. *The failure to reduce the felonious assaults to misdemeanors.*

Appellants contend the trial court denied them fundamental fairness and abused its discretion as it used an improper standard to deny the motions to reduce the felonious assaults (counts 1, 2 and 4) to misdemeanors.

The felonious assault charges are " 'wobblers' " and pursuant to section 17, subdivision (b), may be punished alternately as felonies and misdemeanors. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974 (*Alvarez*).)

20

The pertinent facts to this contention are stated in our initial statement of facts on pages 9-10, in "*The sentencing proceedings*."

Appellants argue that the trial court's misunderstanding of the standard and scope of its discretion is demonstrated by its comment that despite its own view of the events of the assaults, "having found no grounds for granting a new trial," it believed that it had "to live with the jury's findings." Further, they urge that the trial court's later comments and findings in mitigation, and the following factors in mitigation provided to the trial court, buttress their claim: (1) appellants' conduct was less blameworthy than the so-called victims, (2) appellants were drawn into the melee by Sandoval, (3) appellants' misconduct was unlikely to reoccur, and (3) appellants were otherwise productive members of society who displayed all the characteristics of good citizenship.

We disagree.

### a. *Waiver and claim of constitutionally ineffective assistance of trial counsel.*

At the outset, the issue is waived. (*People v. Scott* (1994) 9 Cal.4th 331.) There was no objection to the trial court's ruling on this ground, and it is settled that the failure to object results in a waiver whenever an appellant raises claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. (*Id*. at p. 353.) Vasquez asserts an exception as the trial court did not give an indicated ruling, and there was no opportunity to object before, during, or after the ruling. This claim is disingenuous as prior to sentencing, the parties were given an ample opportunity to add to their remarks "with respect to either defendant." The trial court's later refusal to hear belated argument proffered by the prosecutor does not demonstrate the trial court would have similarly cut off any defense objections to the trial court's ruling.

Nevertheless, to forestall a claim of ineffective assistance of trial counsel, we address the claim on the merits. (*People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151.)

### b. *The merits.*

*People v. Carmony* (2004) 33 Cal.4th 367, 374-375, sets out the general rule of review for addressing claims of an abuse of discretion in determining sentencing choices. In reviewing for abuse of discretion, we are guided by two fundamental precepts. First,

" '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Alvarez, supra,* 14 Cal.4th at pp. 977-978, quoting *People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.) Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citation]' " (*Alvarez, supra,* at p. 978, quoting *People v. Preyer* (1985) 164 Cal.App.3d 568, 573.) Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."

Also, because "all discretionary authority is contextual" (*Alvarez, supra*, 14 Cal.4th at p. 978), we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to reduce the assaults to misdemeanors without considering the legal principles and policies that should have guided the court's actions. Valid reasons for exercising discretion specifically in determining whether to reduce a wobbler to a misdemeanor include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial' " (*Alvarez, supra*, at p. 978), and "the general objectives of sentencing such as those set forth in the California Rules of Court . . . ." (*Ibid.*)

California Rules of Court, rule 4.410 provides that the "(a) General objectives of sentencing include: [¶] (1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing."

Subdivision (b) provides as follows: "Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."

The trial court did not make a formal statement of reasons for refusing to reduce the felonious assaults to misdemeanor. Nor is this court aware of any requirement for a formal statement of reasons upon making its decision. (See Cal. Rules of Court, rule 4.406(b) [rule does not include a reduction to a misdemeanor as one of the sentencing choices that requires a statement of reasons].) Nevertheless, the trial court informed the parties that it properly should not be sentencing appellants based on its personal view of the weight and credibility of the evidence, and instead would respect the jury verdict by making sentencing decisions in accordance with the seriousness of the offense as found by the jury.

It was not an abuse of discretion for the trial court to view the trial evidence in accordance with the jury verdicts. The trial court had read the sentencing memorandum and the other sentencing motions submitted by the parties, which discussed the trial evidence, as well as presented to the trial court the individual characteristics of appellants. The trial court was explicit in stating that it had researched the standard for decision with respect to section 17, subdivision (b). There is nothing in the trial court's comments on the motion that lead us to believe that the trial court abrogated its responsibility to make a reasoned decision based on the relevant criteria as set out in *Alvarez* and California Rules of Court, rule 4.410. The jury apparently believed that appellants had escalated the level of the assaults by introducing the use of a knife or knives, which further led to Keener's use of the crowbar. The trial court employed that factor in later denying probation. Thus, it is apparent that the trial court properly used the seriousness of the knife assaults as the reason for choosing the state prison term, notwithstanding the mitigating circumstances of appellants' good character and

23

citizenship. There was no abuse of discretion, nor a denial of fundamental fairness, to refuse to reduce the offenses to misdemeanors.

     5. *Denial of probation.*

     Appellants contend the trial court abused its discretion when it denied their requests for grants of formal probation. As we set out *infra*, the trial court denied the motion after finding the case was an "unusual" one permitting a grant of probation. (§ 1203, subd. (e)(2).) The trial court commented that it was resting its decision not so much on "the facts of the case, but [on] the nature of the charges and the findings by the jury . . . ."

     a. *Waiver and claim of constitutionally ineffective assistance of trial counsel.*

     Again, at the outset, the People argue waiver, and we agree. (*People v. Scott, supra*, 9 Cal.4th at p. 353 [forfeiture rule applies to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" including a failure "to state any reasons or give a sufficient number of valid reasons" for a sentencing choice].) The record reflects the trial court's willingness to consider any objections prior to the formal imposition of sentence, notwithstanding that it was terse with the prosecutor when he complained of wanting to comment further on bail on appeal. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752.) To forestall any claim of constitutionally ineffective assistance of trial counsel, we address the contention on the merits. (*People v. Scaffidi, supra,* 11 Cal.App.4th at p. 151.)

     b. *The merits.*

     The trial court concluded the case was "unusual" within the meaning of section 1203, subdivision (e)(3), notwithstanding appellants' use of a knife or knives. Nevertheless, it found probation inappropriate "given the nature of the charges and the jury's verdict."

     Section 1203, subdivision (e)(2), provides, as follows: "(e) Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] . . . [¶]

(2) Any person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted."[3]

"In the granting of probation, the Legislature has declared the primary considerations to be: 'the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; the loss to the victim; and the needs of the defendant.' (Pen. Code, § 1202.7.)" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) "A trial court has broad discretion in determining whether or not to grant probation. In reviewing that determination it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order . . . is

---

[3] Cal. Rules of Court, rule 4.414 provides, as follows: "Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant. [¶] (a) . . . [¶] Facts relating to the crime include: [¶] (1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime; [¶] (2) Whether the defendant was armed with or used a weapon; [¶] (3) The vulnerability of the victim; [¶] (4) Whether the defendant inflicted physical or emotional injury; [¶] (5) The degree of monetary loss to the victim; [¶] (6) Whether the defendant was an active or a passive participant; [¶] (7) Whether the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur; [¶] (8) Whether the manner in which the crime was carried out demonstrated criminal sophistication or professionalism on the part of the defendant; and [¶] (9) Whether the defendant took advantage of a position of trust or confidence to commit the crime. [¶] (b) . . . [¶] Facts relating to the defendant include: [¶] (1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct; [¶] (2) Prior performance on probation or parole and present probation or parole status; [¶] (3) Willingness to comply with the terms of probation; [¶] (4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors; [¶] (5) The likely effect of imprisonment on the defendant and his or her dependents; [¶] (6) The adverse collateral consequences on the defendant's life resulting from the felony conviction; [¶] (7) Whether the defendant is remorseful; and [¶] (8) The likelihood that if not imprisoned the defendant will be a danger to others."

25

arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court (Du), supra,* 5 Cal.App.4th at p. 825.)

On appeal, the burden is on appellant to show the sentencing decision was irrational or arbitrary. (*People v. Superior Court (Du), supra*, 5 Cal.App.4th at p. 831.)

Navarro argues that no evidence supported the potential factors in aggravation, the trial court "blindly deferred to the verdicts themselves," and the trial court improperly cited as reasons in aggravation the elements of felonious assault in order to deny probation. Vasquez asserts that denial of probation was arbitrary and irrational because the totality of the record, the trial court's remarks and all the relevant factors demonstrate the only reasonable decision was to grant probation.

The trial court read the memoranda appellant proffered in mitigation which contained the factors appellants now claim require grants of probation. We presume the court properly evaluated the assertions of fact in the memoranda in conformity with California Rules of Court, rule 4.414 since there is no evidence to the contrary. (Cal. Rules of Court, rule 4.409.) The trial court at sentencing was entitled to reject or deem insignificant circumstances asserted in accordance with appellants' own view of how the melee occurred. (Cf. *People v. White* (1981) 117 Cal.App.3d 270, 280.) After reviewing the applicable law, the trial court concluded that it was not its function to ignore the jury's decision by sentencing appellants as if they had engaged in no wrongdoing whatsoever. Nevertheless, the trial court afforded appellants considerable leniency considering the seriousness of their misconduct as it apparently viewed Sandoval and Keener as the provocateurs. The trial court did not abuse its discretion by relying on the dangerousness of appellants' conduct and their resorts to the use of a knife. Here, the refusal to grant probation was well within the limitations set by the Legislature, and appellant has not shown the court acted arbitrarily, capriciously or beyond the bounds of reason in denying probation.

26

Also, reliance on an aggravating factor of the use of a knife or knives does not contravene the decision in *People v. Parrott* (1986) 179 Cal.App.3d 1119, 1125. The *Parrott* court reasoned that "if an element of the crime could be used by the court to deny probation, the court would in effect be finding that probation ineligibility exists as the result of the commission of a crime even if such designation was not made by the Legislature." (*Ibid.*) The *Parrott* case is distinguishable. The use of the knife is an element of one prong of how felonious assault may be committed. However, felonious assault can also be committed by the more minimal conduct of threatening another with the application of means of force likely to produce great bodily injury. It is not the battery element of the offense that is the gravamen of this crime. Here, the use of the knife or knives, resulting in injury, far exceeds the essential elements of the offense and demonstrates considerable aggravation. Any case in which a defendant has actually applied force to his victim is significantly more serious that one where there is a mere threat of the application of force. The trial court did not abuse its discretion when it relied on the use of the knife or knives as aggravating.

6. *Penal Code section 654.*

Navarro contends that the trial court imposed the two, concurrent terms of imprisonment of two years each in contravention to the provisions of section 654. We disagree.

In count 1, the jury found only Vasquez committed an assault with a deadly weapon, a knife, on Keener. In count 2, it determined appellants were guilty of assaulting Sandoval by means likely to produce great bodily injury. In count 4, the jury found Navarro had assaulted Sandoval with a deadly weapon, a knife, and that Vasquez was guilty of a simple assault on Sandoval. We have ordered consolidation of counts 2 and 4. Consequently, we examine whether there is a section 654 problem where, in count 1, Vasquez assaulted Keener with a deadly weapon, and in count 2, he assaulted Sandoval by means likely to produce great bodily injury. As to Navarro, he is convicted now only in the newly consolidated count 2 of assault with a deadly weapon, a knife, on Sandoval.

27

Penal Code section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

In *People v. Nelson* (1989) 211 Cal.App.3d 634, 638, the court set out the following principles: "The proscription against double punishment contained in Penal Code section 654 is applicable '. . . where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]' [Citation.] [¶] '[W]hether the acts of which a defendant has been convicted constituted an indivisible course of conduct is primarily a factual determination, made by the trial court, on the basis of its findings concerning the defendant's intent and objective in committing the acts.' [Citation.]"

Appellants' convictions do not violate the proscription in section 654. Multiple punishment does not apply to crimes of violence against persons. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1290-1291, citing *People v. Miller* (1977) 18 Cal.3d 873, 886 [§ 654 does not preclude multiple punishment when the defendant was "convicted of a second crime of violence against a second victim"].) In this instance, both appellants can be punished in count 2 as they each committed a separate act of violence on victim Sandoval. Vasquez additionally can be separately punished by the imposition of the concurrent term of imprisonment of two years as he initially assaulted Sandoval with force likely to produce great bodily injury and then assaulted Keener. The assaults involved the application of force to separate victims. (*People v. Miller, supra*, at p. 886.)

## DISPOSITION

The judgments are affirmed, except insofar as we correct the judgment to consolidate count 4 into count 2.

Navarro's judgment is modified to consolidate count 4 into count 2, and count 2 will be a conviction of the greater offense of a violation of section 245, subdivision (a)(1), assault with a deadly weapon, to wit, a knife.  His term of imprisonment for count 2 of two years remains the same, and the term of two years in state prison imposed concurrently for count 4 is vacated.  Navarro's conviction in count 3, the hit and run, is not affected by our order.

Vasquez's judgment is modified by consolidating his conviction of simple assault in count 4 into count 2.  His consolidated conviction in count 2 is an assault by means of force likely to produce great bodily injury, and its term of imprisonment remains the two-year term originally imposed by the trial court.  The county jail sentence imposed in  the previous count 4 is vacated.  Vasquez's conviction in count 1, assault with a deadly weapon, is not affected by our modifications to the judgments.  The lower terms of two years in state prison imposed concurrently for counts 1 and 2 remain the same.

The trial court shall cause its clerk to prepare and send to the California Department of Corrections amended abstracts of judgment that state judgments, as modified.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KLEIN, P. J.

We concur:

CROSKEY, J.                                        KITCHING, J.

29