Filed 1/30/15  P. v. Berna CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL ALLEN BERNA,<br><br>    Defendant and Appellant. | F066764<br><br>(Super. Ct. No. 12CM2572)<br><br>**OPINION** |

-ooOoo-

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Emily J. Haden, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

Michael Allen Berna was convicted of being a felon in possession of a firearm, receiving a stolen firearm, carrying a loaded firearm in a vehicle in a public place, and

---

[*]Before Levy, Acting P.J., Cornell, J., and Smith, J.

driving without a license. He argues that the trial court erroneously admitted evidence that, along with the gun, he was in possession of paraphernalia indicative of possible drug selling. He also argues that the court erred by not giving, on its own motion, a jury instruction on the limited admissibility of that evidence. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

In the afternoon of July 19, 2012, Officer Alvaro Santos of the Lemoore Police Department pulled over Berna's Chevrolet Suburban. The Suburban had wide tires that extended six inches beyond the fenders, violating Vehicle Code section 27600 (mud flaps required if tires wider than body of vehicle). Berna presented an expired driver's license. Santos had Berna get out so he could have the Suburban towed, which was the usual procedure in cases of unlicensed drivers.

Santos then spoke to James Green, who was in the passenger seat. In response to Santos's questions, Green admitted he had "some weed" in his pocket, which turned out to be "enough for about one use." Green also had some plastic baggies, on which there was a four-leaf clover logo. Santos handcuffed Green and put him in the patrol car. Green ultimately was cited and released.

Santos told Berna he was going to impound the Suburban and would need to conduct an inventory search. Berna became argumentative. He clenched his fist and yelled that Santos could not search the car. Santos told Berna to put his hands behind his back, but Berna failed to do so and continued to yell that Santos could not search the car. As two other officers grabbed Berna's hands, Santos drew his Taser from its holster and held it at his side. Berna was handcuffed.

Santos searched the Suburban. He found about four changes of men's clothes on the back seat. Later, during booking, Berna told Santos he was homeless and had been living in the Suburban. In the middle of the front seat, between the driver and passenger, Santos found a black nylon bag. The bag was open and Santos saw the handle of a gun

2

inside. He took the bag and emptied its contents onto the hood of the patrol car. The gun, which was loaded and in a holster, was a Colt .45-caliber semiautomatic. Santos reported its serial number to a dispatcher and found that the gun had been reported stolen. A debit card and a credit card, both bearing Berna's name, were inside the bag as well.

The bag also contained a small digital scale and 66 small plastic baggies. Some of the baggies had the clover leaf logo and others had a Superman logo. One baggie had a white crystalline substance inside. The scale had a small amount of residue of the same substance. Seven of the baggies were inside an unlabeled prescription drug vial.

Other items in the bag were a watch, a small pocketknife, a larger knife, a pair of sunglasses, a bottle of cologne, an unlabeled prescription drug vial containing some pills of the prescription drug Soma, and another pill bottle with another kind of pill inside.

The district attorney filed an information charging Berna with four counts: (1) being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1));[1] (2) carrying a loaded firearm in a vehicle, while in a public place in an incorporated city or a prohibited area of unincorporated territory, and while having a prior felony conviction (§ 25850, subds. (a), (c)); (3) receipt of stolen property (§ 496, subd. (a)); and (4) driving without a license (Veh. Code, § 12500, subd. (a)).

At trial, Santos testified to the above facts, except that he did not, during the prosecution's case in chief, refer to the scale, baggies, pills, or pill vials. Berna testified on his own behalf and admitted that the black nylon bag was his. He said he used the bag to carry his things to a college gym for a physical education class. He identified as his the debit and credit cards, as well as the watch, sunglasses, cologne, and small pocketknife. He also had some speakers and headphones for his phone. In his gym class, students linked their phones to a public address system that allowed them to hear the

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

teacher; he used the devices for this purpose. He did not know there was a gun in the bag or in the car.

Berna disputed some aspects of Santos's description of what happened when Berna was arrested. At least one of the bank cards was not in the gym bag, but was on the car seat. When Berna said Santos had no right to search the car, Santos did not hold his Taser at his side, but instead pointed it at Berna's face, two inches away. As he was doing this, Santos was angry and asked whether Berna was resisting. Berna held his hands in the air and did not clench his fist. He explained that the reason he did not want Santos to search the car was that Green had been drinking beer and there was an open beer can in the car. Berna did not remember telling Santos he was homeless; instead, Berna told Santos he had an address.

At one point while defense counsel was examining Berna about the contents of the bag and whether there was a gun in it, Berna said: "No, just useless junk like headphones and stuff for class, that was it." This led to a request by the prosecution for permission to cross-examine Berna about the scale, baggies, pills, and vials. Defense counsel argued that evidence of these items would be irrelevant and would be subject to exclusion under Evidence Code section 352. The court ruled that it would allow questioning about the items. It said there "certainly is no prejudicial effect of baggies and a scale" because, without expert testimony about the significance of those items, "it really doesn't mean anything."

On cross-examination, Berna testified that he had no knowledge of the scale or baggies. He acknowledged that the Soma pills and the unlabeled vial containing them were his, but he did not recognize the other unlabeled vial with baggies inside. He had a prescription for the Soma. A second knife was not his.

The prosecutor called Santos as a rebuttal witness and questioned him about the scale and baggies. Defense counsel objected on relevance grounds. The court overruled

4

the objection, but then held a conference outside the jury's presence to discuss the matter. The court said: "Those items have nothing to do with identification, there is nothing in there that would show that Mr. Berna owned those. He has denied that he has had any knowledge of that. However, if there is other testimony as to what those items would be for, then of course that would go to motive …."

The prosecutor argued that presenting evidence of all the items in the bag would be a more compelling showing that the items belonged to Berna than presenting evidence of just some of them. He said, "[T]here is sort of a cumulative effect but not in a 352 way, but cumulative way in the circumstantial evidence type of way …." The prosecutor also said it was unlikely that Green would have been able to transfer the drug-related materials into the bag along with the gun without Berna or the police noticing, so those materials helped to discredit Berna's story.

After these remarks, the court continued to develop the idea that expert testimony about the purpose of the scale and baggies would be relevant to Berna's motive for possessing the gun. It stated, "This officer, I don't know if he has the expertise, but I imagine he does because those in the criminal system know what those things mean …." With this prompting, the prosecutor proffered Officer Santos as an expert, and the court determined that the testimony would be relevant and not subject to an Evidence Code section 352 objection. It would be "prejudicial," but also "highly probative." The court also said that, even if the prosecution did not present expert testimony, "the evidence is still admissible based on your earlier representation …."

Officer Santos was then qualified as an expert and questioned about why Berna might have the scale and baggies together with the gun. Santos answered, "It indicated to me that there was possibly—Mr. Berna was possibly dealing drugs." He explained that the baggies and scale could be a sign of drug transactions and that the gun and knife could be used by a dealer to protect himself and his drugs from theft. A drug dealer

5

would likely keep these items concealed in a container and keep them together in one place.

Defense counsel cross-examined Santos and asked him whether he searched Green. He did, and found some marijuana and some baggies with the four-leaf clover logo. On redirect, Santos testified as an expert that drug dealers often work in pairs.

In his closing argument, defense counsel said circumstantial evidence supported the conclusion that the gun belonged to Green, who possessed it without Berna's knowledge, and who placed it in the bag after the police told Berna to get out of the car, so Green would not be caught with the gun as well as the marijuana and baggies.

During its deliberations, the jury sent a note to the court asking if it could see the police report written at the time of Berna's arrest and the record of the inventory taken of the car's contents. The jurors wanted to know whether an open alcoholic beverage container was found. The court denied the request on the ground that the police report and inventory were not admitted into evidence. The jury found Berna guilty as charged.

The court sentenced Berna to three years, as follows: On count 2, the court imposed the upper term of three years. On count 4, it imposed a concurrent term of 29 days. Sentences for counts 1 and 3 were stayed pursuant to section 654.

### *DISCUSSION*

#### I.     *Admissibility of drug evidence*

Berna argues that the court committed reversible error by admitting evidence that the bag contained a scale, baggies with logos, and pills. He maintains that this evidence was irrelevant; that, even if relevant, its probative value was substantially outweighed by its prejudicial effect within the meaning of Evidence Code section 352; and that it was inadmissible character evidence under Evidence Code section 1101, subdivision (a). The trial court's decisions on these matters were committed to its sound discretion and we

6

cannot disturb them absent a showing of abuse of discretion. (*People v. Crittenden* (1994) 9 Cal.4th 83, 132; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The court could reasonably find that the evidence was relevant. Relevant evidence is that which has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The drug-related evidence had a tendency to prove that the possessor of the bag had a motive to be in possession of the gun: The bag contained the tools and supplies of a drug dealer, and a drug dealer has a motive to carry a weapon. Proof of motive is one of the acceptable, non-character-related grounds for admitting evidence of an uncharged criminal act. (Evid. Code, § 1101, subd. (b).) Further, as the prosecutor argued, the presence of the drug-related evidence made it less believable that Green put all the contraband, including the gun, into the bag when Berna was not looking. In light of these points, the court could reasonably find that the probative value of this evidence was not substantially outweighed by its prejudicial effect, so Evidence Code section 352 did not require its exclusion.

Berna argues that the drug-related evidence was highly prejudicial partly because the jury was shown photographs in which the drug-related items appeared beside items Berna admitted owning. We do not see what difference this makes. The relevance of the items depended on the jury knowing that they were found inside Berna's bag. It would have known this regardless of whether the photos showed the items together or separately.

Berna also argues that the prejudicial effect of the evidence was aggravated by the length of time taken to present it. He says it "took longer than the prosecution's case in chief" and "constituted more than half of the prosecution's case." This claim is based on Berna's calculation that the prosecution's case-in-chief is reported in 53 pages of the reporter's transcript while an additional 61 pages are "devoted entirely to evidence of

7

uncharged acts." This means, he says, that "more than half of the trial was devoted to prejudicial evidence of uncharged acts," so the evidence of the drug-related items "clearly formed a dominant part of the evidence against" him.

Berna exaggerates. The entire trial, from opening instructions to verdict, is reported in 253 pages of the reporter's transcript. Examination of witnesses in the prosecution's case-in-chief, excluding recesses, bench conferences and the like, took 61 pages. The examination of Berna, the sole defense witness, took 47 pages. The examination of Santos as a rebuttal witness, including direct and cross-examination, took 49 pages, of which 30 were filled by questions and answers about the drug-related evidence. The testimony presented on rebuttal pertaining to the drug-related evidence thus was 12 percent of the trial, 19 percent of the testimony, and 27 percent of the testimony of prosecution witnesses. There is no reason to think this evidence dominated the jury's attention because of its quantity.

For all these reasons, the court did not abuse its discretion in admitting the evidence.

## II. *Limiting instruction*

Berna argues that the trial court erred by not giving the jury an instruction on the limited purposes for which it could consider the evidence that he possessed materials consistent with drug dealing. He acknowledges that his trial counsel did not request such an instruction and that, ordinarily, an instruction limiting the purposes for which evidence of an uncharged act can be considered need not be given unless requested. (*People v. Collie* (1981) 30 Cal.3d 43, 64 (*Collie*).) He asserts, however, that this is one of those extraordinary cases in which the evidence of an uncharged offense is such a "dominant part of the evidence against the accused" that it would be "highly prejudicial" without a limiting instruction, and therefore the court was required to give one sua sponte. (*Ibid.*)

8

In *Collie*, the defendant was convicted of attempting to murder his wife. (*Collie, supra*, 30 Cal.3d at pp. 48-49.) The jury heard evidence of the defendant's previous assaults on his wife. (*Id.* at p. 63.) Our Supreme Court rejected the contention that the trial court was required to instruct the jury, sua sponte, that evidence of the prior assaults could be considered for limited purposes only. This is required only in rare cases:

> "Neither precedent nor policy favors a rule that would saddle the trial court with the duty either to interrupt the testimony *sua sponte* to admonish the jury whenever a witness implicates the defendant in another offense, or to review the entire record at trial's end in search of such testimony. There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important to the case that *sua sponte* instruction would be needed to protect the defendant from his counsel's inadvertence." (*Collie, supra*, 30 Cal.3d at p. 64.)

In this case, the evidence of drug dealing was not a dominant part of the case. The case was dominated by the evidence that the stolen gun was found in Berna's car in a bag Berna admitted was his, along with items with Berna's name on them and other items Berna admitted he owned. The evidence of drug dealing was a subsidiary part of the case, included to show Berna's motive and undermine his theory that Green put all the incriminating items in the bag without his knowledge. Its presentation did not consume a disproportionate amount of time, contrary to Berna's contention. It was not "so obviously important" (*Collie, supra*, 30 Cal.3d at p. 64) as to require an unrequested instruction. At the same time, the evidence was not only "minimally relevant to any legitimate purpose." (*Ibid.*) For the reasons we have stated, it had substantial probative value.

Berna finally argues that the court should have given the instruction on its own motion because it was the court's idea to use expert testimony. There is no authority for this notion. *People v. Morrisson* (1979) 92 Cal.App.3d 787, 790-791, which Berna cites, states only that the defendant waived his right to argue that the court should have given

9

such an instruction sua sponte because it was he who first brought the uncharged acts to the jury's attention. The opinion does not state that the defendant would have been entitled to a sua sponte instruction if someone else had raised the uncharged acts; and, in fact, it cites several cases holding that an instruction of this kind must be requested. (*Ibid.*) Further, if the opinion had said no request was necessary, it would have been effectively overruled when *Collie* was decided two years later.

No sua sponte instruction was required.

## *DISPOSITION*

The judgment is affirmed.

10