CORRIGAN, J.,
Dissenting.—I respectfully dissent from the majority’s reversal of the lying-in-wait special circumstance. (Pen. Code, § 190.2, subd. (a)(15).) The majority concludes defendant was prejudiced by the court’s failure to instruct on circumstantial evidence as it relates to the lying-in-wait special circumstance. Specifically, such an instruction would have stated that if circumstantial evidence supports multiple reasonable conclusions and one of those conclusions supports an inference that the special circumstance is not true, then the jury must conclude the allegation has not been proven by the circumstantial evidence. (See CALCRIM No. 704 [Special Circumstances: Circumstantial Evidence—Sufficiency]; CALJIC Nos. 8.83 [Special Circumstances—Sufficiency of Circumstantial Evidence— Generally], 8.83.1 [Special Circumstances—Sufficiency of Circumstantial Evidence to Prove Required Mental State].) Defendant did not request such an instruction, but the majority concludes the trial court should have given it sua sponte. (Maj. opn., ante, at pp. 420M-21.)
*465 CALJIC No. 8.81.15 (6th ed. 1996) (Special Circumstances—Murder While Lying in Wait), as given, informed the jury that it could find the lying-in-wait special circumstance true if defendant intentionally killed the victim and the murder was committed while lying in wait. The instruction defined “lying in wait” as “a waiting and watching for an opportune time to act, together with a concealment by ambush or by some other secret design to take the other person by surprise. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation.”
The truth of this special circumstance thus turned on whether defendant was “waiting and watching for an opportune time to act.” The majority fails to distinguish between direct and circumstantial evidence. Defendant’s confession was direct evidence of his own mental state. Sergeant Richard Valdemar’s testimony was circumstantial in that it related facts supporting a different conclusion about that same question. Valdemar testified that gangs “often use military type tactics,” including having a person with a long firearm who “would take a position of advantage that would allow him to cover the people with hand guns who would approach the house, possibly also acting as lookouts on either end of the street. . . .” Gangs also anticipate police intervention and “it would be the backup man’s duty to take them on and pin them down or kill them if possible.” The majority reasons that “[ajlthough there was evidence that Sandoval was hiding and waiting and watching as soon as the police appeared on Lime Avenue, Sergeant Valdemar’s testimony was the principal evidence in support of the prosecution’s theory that Sandoval was watching and waiting for an opportune time to commit the murder from the moment he spotted the police.” (Maj. opn., ante, at p. 421.) This testimony was in contrast to the defense claim that defendant was not watching and waiting for an opportune time to act, but merely hiding from police when he ducked behind a car as he saw police approach. The only evidence cited by the defense in support of its theory was the timeline of events recounted by defendant in his confession and his own direct statements about what he saw and did.
On these facts, I disagree the trial court erred. The applicable rule on this is well established. “ ‘[Wjhen the only inference to be drawn from circumstantial evidence points to the existence of a requisite mental state, a circumstantial evidence instruction need not be given sua sponte: ” (People v. Rodrigues (1994) 8 Cal.4th 1060, 1142 [36 Cal.Rptr.2d 235, 885 P.2d 1], italics added; see People v. Morrisson (1979) 92 Cal.App.3d 787, 791-794 [155 Cal.Rptr. 152]; see also People v. Dunkle (2005) 36 Cal.4th 861, 928 [32 Cal.Rptr.3d 23, 116 P.3d 494] (Dunkle), disapproved on another ground in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]; People v. Heishman (1988) 45 Cal.3d 147, 167 [246 Cal.Rptr. 673, 753 P.2d 629], abrogated on another ground in People v. Diaz (2015) 60 Cal.4th 1176, 1190 *466 [185 Cal.Rptr.3d 431, 345 P.3d 62]; People v. Wiley (1976) 18 Cal.3d 162, 175[133 Cal.Rptr. 135, 554 P.3d 881] (Wiley).)
The only relevant circumstantial evidence cited by the majority is Sergeant Valdemar’s testimony. Yet, the majority fails to explain how that testimony, if believed, reasonably supported an inference that defendant did not act with the required mental state. Sergeant Valdemar’s testimony that gangs “usually” are prepared for police intervention and it is the duty of the person with the long firearm to “pin them down or kill them if possible” supports the inference that defendant was so prepared and intended to do so as he sought cover from the approaching officers. If the jury believed this interpretation of Valdemar’s testimony, the only reasonable conclusion to be drawn was that defendant was watching the officers and waiting for an opportune time to shoot and thus acted with the requisite mental state. The majority suggests the jury could have rejected the prosecution’s theory based upon defendant’s confession. (Maj. opn., ante, at p. 422.) It could have done so. But in such a case, it would have rejected the circumstantial evidence and accepted defendant’s own direct evidence.
Although the majority disagrees with this analysis, its attempt to refute it only bears it out. The majority asserts: “A reasonable juror, while believing the gang expert, might have inferred that his testimony about how street gangs usually think and act did not prove that Sandoval thought or acted that way in this instance. Such a juror could reasonably refuse to credit the prosecution’s theory about what Sandoval was thinking when he first saw the police unless Sergeant Valdemar’s testimony was supported by direct evidence of Sandoval’s mental state at the time. This view does not posit that the jury ‘rejected the circumstantial evidence’ (dis. opn., post, at p. 466); it posits only that the jury reasonably rejected the inference that the prosecution wanted it to draw from that evidence.” (Maj. opn., ante, at p. 422.)
However, in this scenario, the jury “refuse[s] to credit the prosecution’s theory” and “reject[s] the inference that the prosecution wanted it to draw from that evidence” based upon its evaluation of the direct evidence of defendant’s confession. Contrary to the majority’s suggestion, the circumstantial evidence instruction is not intended to address a potential conflict between direct and circumstantial evidence. That instruction addresses the danger that a jury would rely on circumstantial evidence to convict even though the same evidence may reasonably support a finding of innocence. That simply is not the case here. The majority points to no interpretation under which Valdemar’s testimony could be understood to support an interpretation reasonably supporting a not guilty finding.
*467 In sum, ‘“[t]he fact that the elements of a charged offense include mental elements that must necessarily be proved by inferences drawn from circumstantial evidence does not alone require an instruction on the effect to be given such evidence however. The contrary is usually the rule.” (Wiley, supra, 18 Cal.3d at p. 175; see Dunkle, supra, 36 Cal.4th at p. 928.) The circumstantial evidence at issue must be both substantially relied upon by the prosecution and support at least one interpretation pointing to innocence. Because the only reasonable inference from Valdemar’s testimony was that defendant acted with the required mental state, the trial court did not err in failing to instruct the jury sua sponte regarding circumstantial evidence. I would affirm the judgment of conviction in its entirety.
Chin, J., concurred.
Appellant’s petition for a rehearing was denied March 9, 2016. Kruger, J., did not participate therein.